[Cite as *Williams v. Dept. of Rehab. & Corr.*, 2019-Ohio-2194.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Nathaniel Williams, Individually and   :
as Administrator of the Estate of
Na'Taun Montrell Williams,   :

        Plaintiff-Appellant,   :       No. 18AP-720
                                 (Ct. of Cl. No. 2016-00125JD)
v.                              :

Ohio Department of             :       (REGULAR CALENDAR)
Rehabilitation and Correction,
                              :

        Defendant-Appellee.   :

                              :

D E C I S I O N

Rendered on June 4, 2019

**On brief:** *Grubb & Associates, LPA, Natalie F. Grubb,* and *Mark E. Owens*, for appellant. **Argued:** *Natalie F. Grubb.*

**On brief:** *Dave Yost*, Attorney General, and *Christopher P. Conomy*, for appellee. **Argued:** *Christopher P. Conomy.*

APPEAL from the Court of Claims of Ohio

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, Nathaniel Williams, individually and as administrator of the estate of Na'Taun Montrell Williams, appeals from a decision and judgment entry of the Court of Claims of Ohio rendering judgment in favor of defendant-appellee, Ohio Department of Rehabilitation and Correction ("ODRC"). For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} On February 22, 2016, Nathaniel refiled a complaint asserting claims of wrongful death, conscious pain prior to death, and intentional tortious conduct against

ODRC.  The complaint alleged ODRC was liable for Na'Taun's death at Ross Correctional Institution following an altercation with another inmate on June 27, 2011.  Nathaniel is Na'Taun's father and administrator of Na'Taun's estate.

{¶ 3}  On October 12, 2016, the trial court granted ODRC's motion for partial summary judgment based on discretionary immunity on any claims based on ODRC's alleged failure to subject inmates to a metal detector when they entered the prison yard. Additionally, the trial court entered judgment in favor of ODRC on any claim arising from an alleged failure to put the prison on lockdown following a gang fight on June 26, 2011. The remaining claims then proceeded to a bifurcated trial before a magistrate on the issue of liability.

{¶ 4}  The trial before the magistrate began on October 16, 2017.  The evidence at the hearing indicated that Na'Taun and another inmate, Carl Hall, had an altercation in a cell on May 24, 2011 after Na'Taun was caught in possession of alcohol and blamed Hall for tipping off the corrections officers.  That altercation turned physical; Na'Taun forced Hall's head into a bedpost resulting in Hall's scalp splitting open.  When asked by corrections officers how he was injured, Hall told the corrections officers he had injured himself. Though he still maintained that he injured himself, Hall changed his explanation of how he injured himself when asked by Lieutenant Joey Powers, and Powers decided to place Hall under security control in the segregation unit, suspecting that Hall had been injured in an altercation with another inmate.  Lieutenant Powers prepared a security control report that he sent to the deputy warden, and he notified the supervisor of the next shift of his reasons for placing Hall in security control.

{¶ 5}  After corrections officers began to suspect that Na'Taun was involved in Hall's injury, corrections officers placed him under security control in the segregation unit. Lieutenant Powers spoke separately with Hall, Na'Taun, and another inmate, Antoine Davis, multiple times, and each time Na'Taun told Powers he had no involvement with Hall. Hall never offered any information about being injured by another inmate.  Lieutenant Powers reported that neither Na'Taun nor Hall ever expressed to him or to any other corrections officer a fear of the other or a desire to be separated from the other.

{¶ 6}  The evidence also indicated that while some other inmates knew of an underlying dispute between Na'Taun and Hall, no one ever made specific reports to the

staff of an impending attack between the two. Lieutenant Michael Yates was told Na'Taun and Hall had verbally argued, but no one ever made staff aware that Na'Taun was responsible for Hall's injury. Because Na'Taun, Hall, and Davis all denied knowledge of Hall's injuries and did not provide corrections officers with any information about a potential feud among the inmates, corrections officers released all three of them back into their regular housing units by June 8, 2011.

{¶ 7} Once they were released from security control, Na'Taun and Hall would see each other at meals, and Na'Taun would threaten Hall, insisting that Hall compensate him in order to settle the dispute. Hall testified he was also approached by other inmates purporting to deliver messages from Na'Taun, ordering Hall to pay Na'Taun or face more violence.

{¶ 8} On June 27, 2011, the first time both Na'Taun and Hall were in the recreation yard together since the May 24, 2011 altercation, Na'Taun approached Hall and made threatening gestures. Both Hall and James Bliss, another inmate who witnessed the altercation, testified that Na'Taun then threw a punch and attacked Hall. Hall initially backed away but Na'Taun continued to throw punches, and Hall and Na'Taun then became involved in a struggle, falling to the ground in the process with Na'Taun on top of Hall. During that struggle, Hall used a sharpened piece of metal to stab Na'Taun three times: once in the neck, once in the torso, and once in the cheek.

{¶ 9} Approximately one minute after the altercation in the recreation yard began, Corrections Officer John Cox noticed an inmate on the ground and thought it was possible the inmate was having a medical emergency. When Cox saw that Hall was beneath Na'Taun and realized the two were engaged in a struggle, Cox radioed for assistance. Corrections Officer Darwin Secrest ran from an adjacent gymnasium and arrived beside Hall and Na'Taun before Cox did. The corrections officers separated the inmates and the entire altercation was over in less than 90 seconds after it began. Secrest attempted to render emergency aid to Na'Taun on the scene and summoned medical assistance. Corrections officers secured the scene and medical responders attended to Na'Taun who later died from his injuries.

{¶ 10} In an April 27, 2018 decision, the magistrate recommended that judgment be entered in favor of ODRC. Specifically, the magistrate found that the greater weight of the

evidence established that ODRC did not have sufficient actual or constructive notice to be liable for Na'Taun's fatal injuries.  The magistrate additionally found that there was no credible evidence presented that Hall ever threatened Na'Taun, or that anyone ever informed ODRC staff that either Hall or Na'Taun was in danger.  To the contrary, the magistrate concluded that the evidence demonstrated that Na'Taun was the one perpetuating the dispute and that Na'Taun lied about having any involvement with Hall when directly asked by Lieutenant Powers.  Finally, the magistrate concluded that even if Nathaniel could have proved some negligence on the part of ODRC, Na'Taun's own contributory fault to the fatal altercation would be greater in degree to any potential fault attributable to ODRC, and thus would bar any recovery by Nathaniel.

{¶ 11} Nathaniel filed objections to the magistrate's decision on May 25, 2018.  Specifically, Nathaniel's two objections stated:

> [1.] The magistrate's finding that [ODRC] did not have sufficient notice, actual or constructive, to be liable for [Na'Taun's] death is contrary to the greater weight of the evidence.
>
> [2.] The magistrate erred in finding that any contributory fault would be greater in degree than any fault attributable to [ODRC].

(Objs. at 9, 12.)

{¶ 12} In an August 15, 2018 decision, the trial court overruled Nathaniel's two objections and concluded the magistrate properly determined the factual issues and appropriately applied the law.  Specifically, the trial court agreed "with the magistrate's determination that no credible evidence is in the record to support a conclusion that inmate Carl Hall threatened to harm Na'Taun Williams or that Williams or anyone else told prison staff either Hall or Williams was in danger."  (Mag.'s Decision at 8.)  Thus, the trial court ruled that the magistrate's April 27, 2018 decision should be adopted.  In a judgment entry also filed August 15, 2018, the trial court entered judgment in favor of ODRC.  Nathaniel timely appeals.

## II.  Assignments of Error

{¶ 13} Nathaniel assigns the following errors for our review:

> [1.] The trial court erred in finding that the ODRC did not have sufficient actual or constructive notice to be liable for Williams' death.
>
> [2.] The trial court erred in failing to find that ODRC employees violated the ODRC's own written policies and procedures in their performance and execution thereof.
>
> [3.] The trial court erred in failing to find that the ODRC is liable for intentional tortious conduct.

## III.  First Assignment of Error – Actual or Constructive Notice

{¶ 14} In his first assignment of error, Nathaniel argues the trial court erred in finding that ODRC did not have sufficient actual or constructive notice to be liable of Na'Taun's death.

{¶ 15} Nathaniel's claims for wrongful death and conscious pain by decedent prior to death are both premised on an allegation that ODRC was negligent.  To prevail on a negligence claim, Nathaniel must establish that (1) ODRC owed Na'Taun a duty, (2) ODRC breached that duty, and (3) ODRC's breach proximately caused Na'Taun's injuries.  *Briscoe v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 02AP-1109, 2003-Ohio-3533, ¶ 20, citing *Macklin v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 01AP-293, 2002-Ohio-5069.  Where there is a custodial relationship between the state and its prisoners, the state owes a common law duty of reasonable care and protection from unreasonable risks.  *McCoy v. Engle*, 42 Ohio App.3d 204, 207-08 (10th Dist.1987).  Reasonable care is the degree of caution and foresight that an ordinarily prudent person would employ in similar circumstances.  *Woods v. Ohio Dept. of Rehab. & Corr.*, 130 Ohio App.3d 742, 745 (10th Dist.1998).  While the state is not an insurer of the safety of its prisoners, once it becomes aware of a dangerous condition in the prison, it is required to take reasonable steps necessary to avoid injury to prisoners.  *Nott v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-842, 2010-Ohio-1588, ¶ 8, citing *Clemets v. Heston*, 20 Ohio App.3d 132, 136 (6th Dist.1985).  However, prisoners are also required to use reasonable care to ensure their own safety.  *Id.*, citing *Macklin* at ¶ 21.

{¶ 16} At the outset, we note the parties dispute the applicable standard of review. Pursuant to Civ.R. 53, a trial court conducts a de novo review of a magistrate's decision, undertaking an independent review of the matters objected to in order to determine whether the magistrate has properly determined the factual issues and appropriately applied the law. Civ.R. 53(D)(4)(d); *Watson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 11AP-606, 2012-Ohio-1017, ¶ 6. However, " '[t]he standard of review on appeal from a trial court judgment that adopts a magistrate's decision varies with the nature of the issues that were (1) preserved for review through objections before the trial court and (2) raised on appeal by assignment of error.' " *Starner v. Merchants Holding LLC*, 10th Dist. No. 17AP-621, 2018-Ohio-1165, ¶ 15, quoting *In re Guardianship of Schwarzbach*, 10th Dist. No. 16AP-670, 2017-Ohio-7299, ¶ 14; *Feathers v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 16AP-588, 2017-Ohio-8179, ¶ 10; *In re Adoption of N.D.D.*, 10th Dist. No. 18AP-561, 2019-Ohio-727, ¶ 27. *See also Bickerstaff v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 13AP-1028, 2014-Ohio-2364, ¶ 10 (reviewing a trial court's adoption of a magistrate's decision in a negligence action for the manifest weight of the evidence).

{¶ 17} One of Nathaniel's objections to the trial court was that the magistrate erroneously concluded that ODRC did not have sufficient notice to find ODRC was negligent in relation to Na'Taun's death. On appeal, Nathaniel argues the trial court's conclusion that ODRC was not negligent is against the manifest weight of the evidence. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus. In determining whether a civil judgment is against the manifest weight of the evidence, an appellate court is guided by the presumption that the findings of the trial court are correct. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.* Thus, the relative weight to be given witness testimony and the credibility to be afforded each of the witnesses is a question for the trier of fact. *Rahman v. Ohio Dept. of Transp.*, 10th Dist. No. 05AP-439, 2006-Ohio-3013, ¶ 36.

{¶ 18} Nathaniel argues the magistrate and the trial court erred by finding that ODRC did not have actual or constructive notice that Hall planned to attack Na'Taun. "The law is well-settled in Ohio that ODRC is not liable for the intentional attack of one inmate by another, unless ODRC has adequate notice of an impending assault." *Watson* at ¶ 9, citing *Mitchell v. Ohio Dept. of Rehab. & Corr.*, 107 Ohio App.3d 231, 235 (10th Dist.1995). "Notice may be actual or constructive, the distinction being the manner in which the notice is obtained rather than the amount of information obtained." *Id.*, citing *Hughes v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-1052, 2010-Ohio-4736, ¶ 14. "Actual notice exists where the information was personally communicated to or received by the party," while " '[c]onstructive notice is that notice which the law regards as sufficient to give notice and is regarded as a substitute for actual notice.' " *Id.*, quoting *Hughes* at ¶ 14.

{¶ 19} Upon review, we conclude there was competent, credible evidence for the trial court to conclude that ODRC did not have actual or constructive notice in order to be held liable for Na'Taun's injuries and death. There was ample, consistent evidence that ODRC staff was not aware of any "impending attack," or even a brewing altercation between Na'Taun and Hall. Lieutenant Powers conducted an investigation into Hall's injuries sustained in May 2011, and despite Powers initially suspecting that Na'Taun may have been involved, neither Hall, Na'Taun, nor any other inmate divulged any information to ODRC staff that would put them on notice of the events that ultimately transpired on June 27, 2011. When asked directly, Na'Taun expressly denied to ODRC staff that he had any involvement with Hall. Neither Hall nor Na'Taun expressed or indicated any fear of the other such that ODRC should have been put on notice of a likely violent fight between the two. Moreover, the evidence indicates Na'Taun was the aggressor in the fight, and it thus defies logic that ODRC could or should have been on notice regarding any impending attack from Hall.

{¶ 20} Accordingly, we find that the trial court's conclusion that ODRC did not have sufficient actual or constructive notice to be held liable for negligence related to Na'Taun's death was not against the manifest weight of the evidence. We overrule Nathaniel's first assignment of error.

## IV.  Second and Third Assignments of Error – ODRC's Written Policies and Intentional Tortious Conduct

{¶ 21}  In his second assignment of error, Nathaniel argues the trial court erred in failing to find that ODRC violated its own written policies and procedures.  In his third and final assignment of error, Nathaniel argues the trial court erred in failing to find ODRC liable for intentional tortious conduct.

{¶ 22} As ODRC notes, Nathaniel failed to raise an objection to the magistrate's decision premised either on ODRC's alleged failure to follow its own policies and procedures or on ODRC's liability for intentional tortious conduct.  "Failure to object to a magistrate's conclusion * * * bars an appellant from assigning as error on appeal the trial court's adoption of that legal conclusion." *Freedom Mtge. Corp. v. Groom*, 10th Dist. No. 08AP-761, 2009-Ohio-4482, ¶ 26, citing Civ.R. 53(D)(3)(b)(iv) (stating "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)"); *see also Hadden Co., L.P.A. v. Zweier*, 10th Dist. No. 15AP-210, 2016-Ohio-2733, ¶ 18 (concluding an argument raised for the first time on appeal is not properly before the appellate court where the appellant failed to object to the magistrate's decision on that basis).

{¶ 23} Any review of Nathaniel's second and third assignments of error is constrained to plain error.  In a civil appeal, we will find plain error only if "the asserted error 'seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.' " *Claffey v. Natl. City Bank*, 10th Dist. No. 11AP-95, 2011-Ohio-4926, ¶ 15, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 123 (1997).  Based on the record before us, the facts of the present case do not meet that standard.  Nathaniel disagrees with the trial court's assessment of the evidence before it and ultimate conclusions related to that evidence, but Nathaniel does not allege that the integrity of the judicial process should be called into question. *Simmons v. Easely*, 10th Dist. No. 15AP-626, 2015-Ohio-4971, ¶ 7.  Thus, we overrule Nathaniel's second and third assignments of error.

## V. Disposition

{¶ 24} Based on the foregoing reasons, the trial court did not err in adopting the magistrate's decision and concluding ODRC was not liable for Na'Taun's injuries and death. Having overruled Nathaniel's first, second, and third assignments of error, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

SADLER and DORRIAN, JJ., concur.

———————————