[Cite as *Fraley v. Dept. of Rehab. & Corr.*, 2019-Ohio-2804.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Duane Fraley,                                        :

      Plaintiff-Appellant,                    :

v.                                                   :          No. 18AP-731
                                                                (Ct. of Cl. No. 2016-00709JD)
Ohio Department of Rehabilitation          :
& Correction,                                                (REGULAR CALENDAR)
                                                     :
      Defendant-Appellee,                     :

                                                     :

---

D E C I S I O N

Rendered on July 9, 2019

---

**On brief:** *Swope and Swope*, and *Richard F. Swope*, for appellant. **Argued:** *Richard F. Swope*.

**On brief:** [*Dave Yost*], Attorney General, and *Eric A. Walker*, for appellee. **Argued:** *Eric A. Walker*.

---

APPEAL from the Court of Claims of Ohio

SADLER, J.

{¶ 1} Plaintiff-appellant, Duane Fraley, appeals from a judgment of the Court of Claims of Ohio, in favor of defendant-appellee, Ohio Department of Rehabilitation and Correction ("DRC"). For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} The facts of the case are largely undisputed. At all relevant times, appellant was an inmate at DRC's Pickaway Correctional Institution ("PCI"). On June 14, 2016, appellant and the other inmates from appellant's unit were walking to the dining hall along the concrete walkway adjacent to the dormitory. The sidewalk passed alongside an exterior concrete stairwell with a set of concrete stairs descending to the lower tier of the unit, below

ground level, and an opposing set of concrete stairs ascending to the upper tier of the dormitory.

{¶ 3} The descending stairwell was guarded by a handrail constructed of round metal pipes with a long horizontal top rail connected to shorter vertical rails at either end. The vertical pipes were screwed into a metal flange bolted into the concrete sidewalk. Another metal pipe ran horizontally under the top handrail and was connected to the two vertical rails by a T-shaped metal fitting. A magistrate of the Court of Claims described the events of June 14, 2016 as follows:

> [Appellant] asserted that he was having trouble with his foot and paused by the end of the railing close to a concrete abutment for the descending stairwell to give his foot a break. [Appellant] estimated that he traveled approximately 50 feet when he stopped to rest his foot. Initially [appellant] testified that he was bumped, tried to catch himself on the "structure," and regained consciousness while he was lying at the bottom of the stairwell. (Plaintiff's Exhibit 2). However, [appellant] admitted that in a deposition he stated that he did not specifically remember someone bumping into him. [Appellant] further admitted that he did not remember any bumping or pushing prior to falling in the stairwell. [Appellant] added that he does not recall any part of his body coming into contact with the handrail by the stairwell and that he does not recall the handrail breaking. Ultimately, [appellant] acknowledged that he does not know how or why he fell.

 (May 18, 2018 Mag.'s Decision at 2.)[1]

{¶ 4} On September 22, 2016, appellant filed a complaint against DRC asserting a claim of negligence. The complaint alleges that "the handrail was old and defective, all of which was known to [DRC] before June 14, 2016," and that DRC was "negligent in failing to warn or repair, replace, or direct inmates away from the defective railing, all of which [DRC] was aware of, and in fact directed heavy pedestrian traffic past this dangerous area." (Sept. 22, 2016 Compl. at ¶ 1-2.)

{¶ 5} DRC denied liability and the case was tried to a magistrate of the Court of Claims on the issue of liability. The magistrate issued a decision recommending judgment in favor of DRC as to appellant's negligence claim. Appellant filed an objection to the

---

[1] For purposes of appeal, appellant agrees with the magistrate's findings regarding the incident.

magistrate's decision. In his objection, appellant alleged that "[t]he [m]agistrate erred, as a matter of law, finding the concrete to which the rail was attached did not contribute to the handrail breaking," and "[t]he [m]agistrate erred in determining the [DRC] did not have constructive notice that the handrail was defective and posed an unreasonable hazard to inmates." (July 13, 2018 Objs. to Mag.'s Decision at 1.)

{¶ 6} Appellant filed a partial transcript of the proceedings before the magistrate in support of the objections. The partial transcript contains the trial testimony of PCI employees Justin Swanson and Larry Parker. The Court of Claims overruled appellant's objections and adopted the magistrate's decision as its own.

{¶ 7} Appellant appealed to this court from the judgment of the Court of Claims.

## II. ASSIGNMENTS OF ERROR

{¶ 8} Appellant assigns the following as trial court error:

[1.] THE TRIAL COURT AND THE MAGISTRATE ERRED, AS A MATTER OF LAW, FINDING THE CONCRETE TO WHICH THE RAIL WAS ATTACHED DID NOT CONTRIBUTE TO THE HANDRAIL BREAKING.

[2.] THE TRIAL COURT AND MAGISTRATE ERRED IN DETERMINING THE DEFENDANT-APPELLEE DID NOT HAVE CONSTRUCTIVE NOTICE THAT THE HANDRAIL WAS DEFECTIVE AND POSED AN UNREASONABLE HAZARD TO INMATES.

[3.] THE TRIAL COURT AND MAGISTRATE ERRED IN FINDING DESPITE REGULAR INSPECTIONS BY DEFENDANT-APPELLEE'S EMPLOYEES, DEFENDANT-APPELLEE DID NOT HAVE CONSTRUCTIVE NOTICE OF THE HAZARD THE HANDRAIL PRESENTED TO INMATES USING THE WALKWAY ADJACENT TO THE HANDRAIL.

[4.] THE TRIAL COURT AND MAGISTRATE ERRED AS A MATTER OF LAW IN RULING PLAINTIFF-APPELLANT FAILED TO PROVE DEFENDANT-APPELLEE DID NOT HAVE ACTUAL OR CONSTRUCTIVE NOTICE OF THE DEFECTIVE HANDRAIL.

[5.] THE DECISIONS OF THE MAGISTRATE AND TRIAL COURT ARE AGAINST THE MANAIFEST WEIGHT OF THE EVIDENCE AND ARE CONTRARY TO LAW.

## III.  STANDARD OF REVIEW

{¶ 9}   When reviewing objections to a magistrate's decision, the trial court must undertake an independent de novo review of the matters objected to in order "to determine whether the magistrate has properly determined the factual issues and appropriately applied the law." *Williams v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. No. 18AP-720, 2019-Ohio-2194, ¶ 16, citing Civ.R. 53(D)(4)(d).  "However, ' "the standard of review on appeal from a trial court judgment that adopts a magistrate's decision varies with the nature of the issues that were (1) preserved for review through objections before the trial court and (2) raised on appeal by assignment of error." ' "  *Williams* at ¶ 16, quoting  *Starner v. Merchants Holding LLC*, 10th Dist. No. 17AP-621, 2018-Ohio-1165, ¶ 15, quoting *In re Guardianship of Schwarzbach*, 10th Dist. No. 16AP-670, 2017-Ohio-7299, ¶ 14; *Feathers v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 16AP-588, 2017-Ohio-8179, ¶ 10; *In re Adoption of N.D.D.*, 10th Dist. No. 18AP-561, 2019-Ohio-727, ¶ 27; *Bickerstaff v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. No. 13AP-1028, 2014-Ohio-2364, ¶ 10.

## IV.  LEGAL ANALYSIS

### A.  Appellant's First Assignment of Error

{¶ 10}  In appellant's first assignment of error, appellant contends that the trial court erred when it found that the crumbling concrete on the stairway abutment and elsewhere around the stairway complex did not cause or contribute to the failure of the handrail.  We disagree.

{¶ 11} Appellant's claim against DRC is predicated on negligence.  To prevail on a negligence claim, a plaintiff must establish the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom.  *Skorvanek v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 17AP-222, 2018-Ohio-3870, ¶ 27, citing *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984); *Strother v. Hutchinson*, 67 Ohio St.2d 282, 285 (1981). The plaintiff has the burden to prove each element of their negligence claim by a preponderance of the evidence.  *Skorvanek* at ¶ 27, citing *Forester v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 11AP-366, 2011-Ohio-6296, ¶ 7.

{¶ 12}  "In the context of a custodial relationship between the state and its inmates, the state owes a common-law duty of reasonable care and protection from unreasonable risks of physical harm."  *McElfresh v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 04AP-

177, 2004-Ohio-5545, ¶ 16. "Reasonable care is that degree of caution and foresight an ordinarily prudent person would employ in similar circumstances, and includes the duty to exercise reasonable care to prevent an inmate from being injured by a dangerous condition about which the state knows or should know." *Id.*

{¶ 13} "Although the state is not an insurer of inmate safety, 'once it becomes aware of a dangerous condition it must take reasonable care to prevent injury to the inmate.' " *Skorvanek* at ¶ 28, quoting *Briscoe v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. No. 02AP-1109, 2003-Ohio-3533, ¶ 20. Inmates are also required, however, to use reasonable care to ensure his or her own safety. *Macklin v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 01AP-293, 2002-Ohio-5069, ¶ 21.

{¶ 14} Appellant's primary theory of liability in this case is that the crumbling concrete on the abutment of the ascending stairway caused or contributed to the failure of the handrail. The magistrate concluded that the crumbling concrete on the stairway abutment could not have caused or contributed to the failure of the handrail because the evidence showed that the handrail was not secured to the crumbling concrete. The evidence supports the magistrate's finding and conclusion.

{¶ 15} For purposes of this appeal, appellant accepts the magistrate's summary of the trial testimony of PCI corrections officer, Kenneth Battle, and PCI corrections lieutenant, Todd Sickles. Battle testified that on June 14, 2016, he "found plaintiff who was lying at the bottom of the stairwell with his arms extended above his head and the handrail was on top of his body," and that he removed the handrail with the help of an inmate. (Mag.'s Decision at 3.) The magistrate's decision further states:

> Regarding the stairwell, Battle stated that it was previously taped off due to ongoing work on the crumbling concrete. *Battle added, however, that prior to this incident he was not aware of whether the handrail was unsafe.* According to Battle, the tape was to prevent anyone from descending the stairwell. Battle could not recall exactly how the tape was hung on the handrail, but agreed that inmates are not allowed to sit on any of the handrails.

(Emphasis added.) (Mag.'s Decision at 3.)

{¶ 16} As for Sickles testimony, the magistrate's decision provides as follows:

> Sickles observed that caution tape was hanging down to the ground. Sickles explained that the stairwell was previously

> closed for repairs and that the caution tape had been there for a few weeks prior to this incident. Sickles asserted that when he arrived, he saw [appellant] lying at the bottom of the stairwell. * * * *According to Sickles, he never received any reports that the handrail was unsafe prior to this incident. Sickles stated that he does not recall any warning that officers should not sit on the handrails because they are unsafe, but he added that officers should not sit on any of the handrails.*

(Emphasis added.) (Mag.'s Decision at 3.)

{¶ 17} Larry Parker is the Maintenance Superintendent at PCI. Parker testified that PCI was constructed in the 1920's but he did not know whether the handrail in question was the original handrail. Parker testified that the same type of handrails are installed in the stairway complexes in both D dormitory and C dormitory. On cross-examination, Parker was shown a photograph of the stairwell in question taken subsequent to appellant's fall but prior to repair. (Pl.'s Ex. 1.) When Parker was asked how the handrail had been attached, the following exchange took place:

> Q. Mr. Parker, look again at Plaintiff's Exhibit 1.
>
> A. Yes, sir.
>
> Q. You'll see that in the lower right-hand corner a piping that appears to be a broken portion of what was once a handrail. Is that the kind of material that was used to erect the handrail that was across this stairwell before this fall?
>
> A. Yes, round pipe.
>
> * * *
>
> Q. Okay. * * * Obviously somewhere the handrailing had to be attached to something, either to a hole in the concrete at the base of the tethered concrete or to the concrete itself. Do you know how it was attached?
>
> A. It looks like there was a flange on the ground right here.
>
> Q. Okay. So there was a piping that ran up along the deteriorated concrete, right?
>
> A. It come up, yes.

Q. Okay. And was it merely suspended in the air or was it attached the wall that shows where it's deteriorating and —-

A. It was attached to the floor flange right here. There's a flange on the ground right there that it was attached to.

Q. Okay. Where was it attached at the top? Was it just attached freely so that it went back to the piping that shows at the lower right-hand corner?

A. I believe it was freestanding.

(Trial Tr. Excerpt at 7-8.)

{¶ 18} Though the transcript of Parker's testimony is difficult to follow because Parker is referring to a photographic exhibit, Parker's testimony along with Plaintiff's Exhibit 1 supports a finding that both ends of the handrail were attached to a metal flange which was bolted to the concrete sidewalk. In other words, Parker's testimony and Plaintiff's Exhibit 1 show that the handrail is not attached to the crumbling concrete base for the ascending stairway.

{¶ 19} DRC employee, Justin Swanson, held the position of Maintenance Worker 3 at PCI on the date of appellant's fall. When he heard that an inmate had fallen in a stairway and that the handrail had broken, he went to the stairway to take the measurements needed to fabricate a replacement handrail. When he arrived at the stairway, the broken handrail had already been removed. Swanson was not sure where the broken handrail had been taken and he was never asked to perform any investigation to determine the cause of the breakage.

{¶ 20} Swanson was unable to determine the cause of the handrail failure by looking at Plaintiff's Exhibit 1, but he did offer that the handrail appeared to have broken off at the flange. He observed that a piece of the flange was still sticking out of the ground at the point where the handrail had been attached to the concrete sidewalk nearest the entry to the descending stairs. Swanson agreed that the handrail must have broken loose from the flange. When appellant's counsel asked Swanson how the handrail was attached at the

other end nearest the concrete abutment, he answered that it was attached "to the ground" in the same manner as the other end.  (Tr. at 21.)[2]

{¶ 21} The testimony of Parker and Swanson supports a finding that the handrail was attached to the concrete sidewalk at both ends and was not attached to the crumbling concrete at the stairway abutment.  Unlike the concrete base of the ascending stairway, the concrete sidewalk as shown in Plaintiff's Exhibit 1 does not appear to be in a considerable state of deterioration or disrepair.  This being the case, appellant's primary theory of liability is not supported in the record.  Accordingly, we hold that the trial court's conclusion that the crumbling concrete shown in Plaintiff's Exhibit 1 did not cause or contribute to the failure of the handrail is supported by sufficient evidence in the record and not against the manifest weight of the evidence.  Appellant's first assignment of error is overruled.

## B. Appellant's second, third, and fourth assignments of error

{¶ 22} In appellant's second, third, and fourth assignments of error, appellant argues, for various reasons, the Court of Claims erred when it found that DRC did not have prior notice of a defect in the handrail.  Accordingly, we will consider them together.

### 1. Actual notice

{¶ 23} "Actual notice exists where, from competent evidence, the trier of fact can conclude the pertinent information was personally communicated to, or received by, the party." *Kemer v. Ohio Dept. of Transp.*, 10th Dist. No. 09AP-248, 2009-Ohio-5714, ¶ 21, citing *In re Fahle's Estate*, 90 Ohio App. 195, 197 (6th Dist.1950).  "Actual notice may be (1) express or direct information, or (2) implied or inferred from the fact that the person had means of knowledge which he did not use." *Id.* at 198.

{¶ 24} As this court has determined in resolving appellant's first assignment of error, appellant failed to prove that the crumbling concrete at the stairway abutment caused or contributed to the failure of the handrail in question.  Had appellant proven that the crumbling concrete caused or contributed to the failure of the handrail there would be no question that DRC had actual notice of the defect.  Appellant maintains that the evidence establishes that DRC, nevertheless, had actual notice, prior to appellant's fall, that the

---

[2] We note that Defendant's Exhibit C is a photograph of another PCI exterior stairway complex of the same configuration as the stairway complex at issue in this case.  The photograph appears to corroborate the testimony of Swanson and Parker that the handrail is attached to the concrete sidewalk at both ends, and is not attached to the abutment to the ascending stairway.

handrail was defective and unreasonably dangerous to inmates using the sidewalk.  We disagree.

{¶ 25}  Parker testified that shortly after appellant's fall, he searched for the broken handrail but could not locate it.  He later learned that the broken handrail had been taken to the Captain's office, but he did not know whether anyone inspected it.  Parker acknowledged that the handrail should not have broken in the course of normal usage, but he had no personal knowledge whether the handrail in question was in a state of disrepair or deterioration.

{¶ 26}  With regard to the PCI maintenance and repair procedures, Parker testified that repairs are typically commenced pursuant to a work order, unless an emergency issue arises.  On the date of appellant's fall, he initiated the handrail replacement following a telephone call because it was an emergent situation.  On direct examination, Parker testified that he checked PCI's computerized maintenance records and found no work orders pertaining to stairway handrails.  Parker told appellant's counsel that the database records go back "[a] few years. I don't know the exact date." (Tr. at 26.)

{¶ 27}  Parker testified that PCI health and safety personnel perform monthly inspections of the premises, and that the dormitory correction officers also perform inspections.  Parker was not asked to describe the inspection procedures.  According to Parker, any staff member can submit a work order. Parker maintained that prior to appellant's fall no one at PCI had ever informed him that a stairway handrail was defective or unsafe.

{¶ 28}  Swanson testified that he was aware in June 2016 that concrete was chipping off of the stairway abutment as shown in Plaintiff's Exhibit 1, but he was not aware of any problems with the handrail in D dormitory or in any of the other dormitories at PCI.  He was also unaware if anyone at PCI conducted an investigation to determine why the handrail failed on June 14, 2016. Swanson did acknowledge that the stairway handrails at PCI should be of sufficient strength to withstand a person merely bumping against them.

{¶ 29}  The evidence in the record supports the determination by the Court of Claims that DRC did not have actual notice of a defect in the stairway handrail that caused or contributed to the failure of the handrail on June 14, 2016.  There is also no evidence to support a finding that any inmate at PCI ever complained to PCI that the stairway handrail

was unsafe or defective, and there is no evidence that any PCI staff member submitted a work order pertaining to the handrail in question or any other exterior stairway handrail at PCI prior to appellant's fall. Thus, the testimony in the record supports the determination of the Court of Claims that DRC did not have actual notice, prior to appellant's fall, of a defect in the handrail that would have rendered the stairway unsafe for inmates walking on the sidewalk.

### 2. Constructive notice

{¶ 30} Constructive notice is that which the law regards sufficient to give notice to a party; it is a substitute for actual notice. *In re Fahle's Estate* at 197-98. "Constructive notice of a defective condition can be imputed to a defendant when the plaintiff presents evidence establishing that the defect could or should have been discovered." *Kemer* at ¶ 24, citing *Nanak v. Columbus*, 121 Ohio App.3d 83, 86 (10th Dist.1997), citing *Beebe v. Toledo*, 168 Ohio St. 203 (1958). "To support an inference of constructive notice, a plaintiff may submit evidence that the condition existed for such a length of time that the owner or its agent's failure to warn against it or remove it resulted from their failure to exercise ordinary care." *Jenkins v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. No. 12AP-787, 2013-Ohio-5106, ¶ 12, citing *Presley v. Norwood*, 36 Ohio St.2d 29, 31-32 (1973).

{¶ 31} In an effort to establish that a defect in the stairway handrail had existed for a sufficient amount of time that DRC should have known of the danger, appellant presented the testimony of fellow inmates Chris Kenney, Todd Smith, and George Jones. Inmate Kenney was acquainted with appellant because he was housed in D-1 dormitory. He saw people removing appellant and the broken handrail from the stairwell after appellant fell, but he did not see appellant fall. He remembered that there had been yellow caution tape across the stairwell due to the crumbling concrete, but he did not see any such tape across the stairwell on the date appellant fell. Kenney had never complained to anyone at PCI about the condition of the stairway handrail.

{¶ 32} Inmate Jones testified that he had been incarcerated in PCI since 2014 and he was familiar with the handrail at issue. Jones did not see appellant fall and could not remember whether there was any yellow caution tape across the stairway on the date appellant fell. He did testify that he had seen inmates either leaning on or sitting on top of the handrail in the past.

{¶ 33} Inmate Smith was the only witness who claimed to have knowledge that the handrail itself was defective prior to appellant's fall. Smith did not see appellant fall and had never complained to anyone at PCI about the condition of the handrail. Nevertheless, on direct examination, Smith testified as follows:

> Q. Could you tell from looking at the area what caused the rail to fall?
>
> A. I just knew that the rail was always loose or barely on there, so I figured that's what happen when --
>
> Q. How do you know it was loose?
>
> A. I just -- several times people would just say something about it or laugh about it or said things about it.

(Pl.'s Ex. 7, Smith Depo. at 7.)

{¶ 34} On cross-examination, Smith expanded on his observations regarding the handrail as follows:

> Q. And how did you know it was loose and wobbly?
>
> A. Because I've seen people try to, you know, push on it. You could just tell the way it sat there, you know.
>
> Q. Did you observe that yourself?
>
> A. Just from walking past it from day to day.
>
> Q. You observed that prior to the date of the incident involving [appellant]?
>
> A. Yeah.
>
> Q. Did you see inmates shake it or anything really?
>
> A. Somebody would lean up against it or stop there and talk, and people would say things like, you know, like, I wouldn't do that.
>
> Q. What does that mean? You said, "I wouldn't do that." Explain what that means.
>
> A. Oh, they would say, I wouldn't sit on that or I wouldn't lean against that or something. They would say stuff like that or,

> like, don't get around that thing, you know -- you know, it's just
> things likes that.

(Pl.'s Ex. 7, Smith Depo. at 11.)

{¶ 35} Smith was not sure how long the handrail had been in the condition he described, but he stated that it had been that way since he arrived at PCI, two years earlier.

{¶ 36} The magistrate found that Smith's testimony regarding the alleged defect in the stairway was not credible because it was "based on what he had learned from other inmates," and "not based on the inmate's personal interaction with the handrail." (Mag.'s Decision at 8-9.) The Court of Claims did not mention Smith's testimony in the decision overruling appellant's objections and adopting the magistrate's decision as its own, but did find that the magistrate "properly determined the factual issues." (Sept. 4, 2018 Jgmt. Entry at 4.) Our review of Smith's deposition testimony reveals nothing that would cause us to doubt the credibility determination made by the Court of Claims. Smith's testimony that the handrail was "loose" and "wobbly" was not corroborated by Kenney, or any other witness, and Jones testified that he had seen inmates leaning against or sitting on top of the handrail in the past. Moreover, none of the inmate witnesses who testified, including appellant, ever complained to the PCI staff about an alleged defect in the handrail.

{¶ 37} Appellant cites *Camp v. Ohio Dept. of Rehab. & Corr.,* Ct. of Cl. No. 2014-00992JD (Aug. 1, 2016), in support of his claim that DRC had constructive notice of a defect in the handrail which rendered that stairway unsafe for inmate's using the sidewalk. We find the case distinguishable.

{¶ 38} In *Camp*, an inmate, Camp, sustained injuries when he fell on an unstable plank on a set of bleachers at Chillicothe Correctional Institution ("CCI"). A magistrate found in favor of the inmate on the issue of liability and DRC filed an objection. In overruling DRC's objection, the Court of Claims agreed with the magistrate's finding that DRC had constructive notice that the bleacher plank had detached from the support underneath because the evidence showed that the defect had existed for at least one year prior to Camp's fall. The magistrate based a finding of constructive notice on the testimony of two inmates who had personal knowledge of the loose bleacher plank years prior to Camp's fall and another inmate who had nearly fallen due to the loose bleacher plank more than one year prior to Camp's fall. The Court of Claims agreed with the magistrate's

conclusion that the defect existed for a sufficient length of time that DRC employees should have discovered it upon conducting a reasonable inspection of the bleachers, and either repaired the defect or took other appropriate action to prevent inmates from being injured. The Court of Claims also agreed with the magistrate's conclusion that there was "no credible evidence that any agent or employee of [CCI] otherwise performed any kind of inspection, maintenance or upkeep of the bleachers at any time." (Ct. of Cl. No. 2014-00992JD Nov. 14, 2016 Jgmt. Entry at 3.) The magistrate had noted that CCI corrections officers conducted occasional visual inspections of the bleachers, but only for the presence of contraband.

{¶ 39} The facts of this case are quite different from those in *Camp*, and a different result is required. Here, appellant did not present sufficient evidence to establish the nature of the defect in the handrail. And, as previously noted, neither the magistrate nor the Court of Claims believed Smith's testimony that the handrail was "loose" and "wobbly" for some period of time prior to appellant's fall. We can find no fault with that determination on this record. Moreover, under Ohio law, "[a] plaintiff cannot prove constructive notice of a hazard without a factual basis that the hazard existed for a sufficient time to enable the exercise of ordinary care." *Sharp v. Andersons, Inc.*, 10th Dist. No. 06AP-81, 2006-Ohio-4075, ¶ 12. On this record, it would be pure speculation to make any finding as to the length of time a defect in the handrail existed.

{¶ 40} We also find no support in the record for appellant's contention that DRC's failure to discover the defect in the handrail was the result of the negligent performance of inspections by PCI's employees. As previously stated, DRC is not an insurer of inmates' safety. *Skorvanek*, 2018-Ohio-3870, at ¶ 28, *Briscoe*, 2003-Ohio-3533, at ¶ 20. A landowner, such as DRC, " ' "has a duty to undertake *reasonable* inspections, not to inspect everything that might conceivably cause injury." ' " (Emphasis sic.) *See Rowe v. Pseekos*, 10th Dist. No. 13AP-889, 2014-Ohio-2024, ¶ 7, quoting *Aldamen v. Sunburst USA, Inc.*, 10th Dist. No. 08AP-235, 2008-Ohio-5071, ¶ 17, quoting *Tarkany v. Bd. of Trustees of Ohio State Univ.*, 10th Dist. No. 90AP-1398 (June 4, 1991). A landowner who undertakes an inspection is not held to a 100 percent success rate if the inspection was reasonable under the circumstances. *Rowe* at ¶ 8, citing *Fitch v. Lake Cty. Historical Soc.*, 11th Dist. No. 2001-L-135, 2002-Ohio-4223, ¶ 31. What constitutes a " 'reasonable inspection' " under

the circumstances of a given case is ordinarily a question for the trier of fact. *Rowe* at ¶ 8, quoting *Aldamen* at ¶ 17.

{¶ 41} In the *Camp* case, the evidence established that the bleacher plank failed because it had detached from the support underneath and that the plank had been in that condition for at least one year prior to Camp's fall. The evidence in *Camp* also established that the inspections conducted of the bleachers were limited to a visible search for contraband. Based on that evidence, the Court of Claims found that DRC's inspection procedure with regard to the bleachers was not reasonable and DRC had constructive notice that the broken bleacher plank created an unreasonably dangerous condition for inmate's using the bleachers.

{¶ 42} Here, appellant presented insufficient evidence to establish the nature of the defect in the stairway handrail. While the testimony at trial established that PCI employees regularly conduct inspections of the premises, there is no evidence as to scope of the inspections in general, and no evidence as to the inspection procedures employed with regard to stairway handrails in particular. The fact that PCI had cordoned off the stairway descent with yellow caution tape at some point in time establishes that PCI exercised some degree of care with regard to known defects. On this record, however, there is insufficient evidence to support a finding that reasonable inspection would have uncovered the defect in the handrail prior to appellant's fall. Any such finding, on this record, would require speculation and guesswork.

{¶ 43} For the foregoing reasons, we hold that the Court of Claims did not err when it determined that DRC did not have actual or constructive notice of a defect in the stairway handrail that rendered the stairway unreasonably dangerous for inmates using the sidewalk. Accordingly, appellant's second, third, and fourth assignments of error are overruled.

## C. Appellant's fifth assignment of error

{¶ 44} In appellant's fifth assignment of error, appellant contends that the judgment of the Court of Claims is against the manifest weight of the evidence. We disagree.

{¶ 45} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279

(1978), syllabus. "In determining whether a civil judgment is against the manifest weight of the evidence, an appellate court is guided by the presumption that the findings of the trial court are correct." *Williams*, 2019-Ohio-2194, at ¶ 10, citing *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984). "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.* "Thus, the relative weight to be given witness testimony and the credibility to be afforded each of the witnesses is a question for the trier of fact." *Williams* at ¶ 17, citing *Rahman v. Ohio Dept. of Transp.*, 10th Dist. No. 05AP-439, 2006-Ohio-3013, ¶ 36.

{¶ 46} In overruling appellant's objections and adopting the magistrate's decision as its own, the Court of Claims reviewed the magistrate's decision, the partial transcript filed by appellant, and the trial exhibits admitted into evidence. The Court of Claims held that appellant had failed to prove by a preponderance of the evidence that DRC breached a duty of care it owed to appellant with respect to his fall that occurred on June 14, 2016. We have also reviewed the partial transcript filed by appellant, and the trial exhibits admitted into evidence, including the deposition testimony of inmates Kenney, Smith, and Jones. Based on our review of the submitted evidence, and for the reasons set forth in connection with our ruling on appellant's other assignments of error, we hold that the trial court's decision in favor of DRC is not against the manifest weight of the evidence.

{¶ 47} We recognize that the record does not disclose any evidence of an investigation into the cause of the handrail failure or an examination of the broken handrail. Appellant, however, has not attributed the lack of such evidence in this case to any wrongdoing on the part of DRC or its employees. Under Ohio law, the burden of proof in a premises liability case predicated on negligence falls squarely on plaintiff. *Harris v. Ohio Dept. of Rehab. & Corr.*, Ct. of Claims No. 2016-00883JD, 2018-Ohio-2276, ¶ 11, quoting *Woods v. Ohio Dept. of Rehab. & Corr.,* 130 Ohio App.3d 742, 744 (10th Dist.1998). Appellant failed to meet his burden of proof in this case. Accordingly, appellant's fifth assignment of error is overruled.

## V. CONCLUSION

{¶ 48} Having overruled appellant's five assignments of error, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

KLATT, P.J., and BEATTY BLUNT, J., concur.

_____