[Cite as *In re R.S.H.-F.*, 2022-Ohio-549.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

IN RE: R.S.H.-F.

: 
: 
:　　Appellate Case No. 29198
: 
:　　Trial Court Case No. G-2015-007346-
:　　1H, 1K
: 
:　　(Appeal from Common Pleas Court-
:　　Juvenile Division)
: 

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of February, 2022.

. . . . . . . . . . .

AMY R. BLAIR, Atty. Reg. No. 0073760, 40 North Main Street, Suite 2160, Dayton, Ohio
45423
　　　Attorney for Appellant, Mother

D.M.F., Kettering, Ohio 45440
　　　Appellee Father, Pro Se

. . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Mother appeals from the trial court's order sustaining Father's objections to a magistrate's decision and overruling her motion to transfer jurisdiction over this child-custody case to Florida. Mother contends the trial court abused its discretion in failing to find that Ohio is an inconvenient forum to resolve the parties' dispute. We see no abuse of discretion in the trial court's refusal to transfer jurisdiction to Florida. Accordingly, the trial court's judgment will be affirmed.

## I. Factual and Procedural Background

{¶ 2} Mother and Father are the parents of a child who was born in August 2014. At that time, both parents resided in Ohio. In November 2015, Mother and the child moved to Florida. Shortly thereafter, Father filed a custody complaint in the trial court. The parties later agreed to Mother's retaining custody and Father's having parenting time. The trial court journalized the agreement in November 2016.

{¶ 3} In December 2016, Father filed a contempt motion and a motion to modify parenting time. Mother responded with her own motions related to parenting time. Although the parties purported to have resolved those issues by agreement, no agreed entry was filed. Their motions eventually were dismissed for want of prosecution.

{¶ 4} In May and June 2018, Father filed motions for contempt, for modification of parenting time, and for a change of custody. Mother moved to transfer jurisdiction over the case to Florida on the basis that it was a more convenient forum. The trial court overruled the motion, and Mother appealed. Father later withdrew his motions after a magistrate denied a joint request for a continuance. Mother then dismissed her appeal.

{¶ 5} In June 2019, Father again filed motions for contempt and a change of

custody. In July 2019, Mother moved to transfer jurisdiction to Florida. A magistrate denied the motion, and Mother filed objections. The trial court vacated the magistrate's decision and remanded for a hearing before a newly-appointed magistrate. Following continuances for reasons including COVID-19, the case proceeded to a July 15, 2020 hearing on Mother's motion to transfer jurisdiction to Florida. The only witnesses at the hearing were Mother and Father. Based on the evidence presented, the magistrate found Ohio to be an inconvenient forum and sustained Mother's motion. Father filed objections. After an independent review of the record, the trial court sustained Father's objections and overruled Mother's motion to transfer jurisdiction to Florida. This appeal followed.

## II. Analysis

{¶ 6} Mother's sole assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION IN SUSTAINING FATHER'S OBJECTIONS, WHICH RESULTED IN THE REVERSAL OF THE MAGISTRATE'S DECISION AND THE DENIAL OF MOTHER'S REQUEST TO TRANSFER JURISDICTION TO THE STATE OF FLORIDA.

{¶ 7} The parties agree that the trial court possessed home-state jurisdiction to issue its original custody decree and that, under R.C. 3127.16, it retained exclusive, continuing jurisdiction by virtue of Father's continued residence in Ohio. Under R.C. 3127.21(A), however, an Ohio court with exclusive, continuing jurisdiction may decline to exercise its jurisdiction if it determines that it is an inconvenient forum and that a court of another state is a more convenient forum. The Revised Code identifies eight non-exclusive factors for a trial court to consider when deciding whether to relinquish jurisdiction:

(1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2) The length of time the child has resided outside this state;

(3) The distance between the court in this state and the court in the state that would assume jurisdiction;

(4) The relative financial circumstances of the parties;

(5) Any agreement of the parties as to which state should assume jurisdiction;

(6) The nature and location of the evidence required to resolve the pending litigation, including the testimony of the child;

(7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence;

(8) The familiarity of the court of each state with the facts and issues in the pending litigation.

R.C. 3127.21(B).

{¶ 8} We apply an abuse-of-discretion review to a trial court's decision to exercise or to decline jurisdiction on the basis of an inconvenient forum. *Baker v. Baker*, 2d Dist. Montgomery No. 27850, 2018-Ohio-3065, ¶ 34. The phrase "abuse of discretion" implies a decision that is unreasonable, arbitrary, or unconscionable. *In re S.S.*, 2d Dist. Miami No. 2011-CA-07, 2011-Ohio-5697, ¶ 7.

{¶ 9} In the June 21, 2021 order on appeal, the trial court summarized the evidence, addressed each of the foregoing factors, and made findings on them. Mother argues that the trial court acted unreasonably in its analysis of the statutory factors. While

recognizing the trial court's broad discretion, Mother first asserts that the magistrate was best positioned to observe witnesses and assess credibility and that the magistrate's observations cannot be conveyed in a written transcript. Therefore, Mother argues that the trial court unreasonably substituted its judgment for that of the magistrate based on only a review of the written record.

{¶ 10} Mother's argument lacks merit. When reviewing objections to a magistrate's decision, a trial court must conduct an independent review. This means, among other things, that a trial court is not compelled to defer to a magistrate's determinations regarding credibility. *Bass v. Bass*, 2d Dist. Montgomery No. 27832, 2018-Ohio-2043, ¶ 10, citing *In re A.O.*, 2d Dist. Montgomery Nos. 25807, 25996, 2014-Ohio-527, ¶ 11. In any event, the trial court's analysis of the R.C. 3127.21(B) factors does not reveal any meaningful disagreement with the magistrate regarding witness credibility. Instead, the trial court simply evaluated the evidence in light of the statutory factors and reached a different conclusion.

{¶ 11} Addressing the first factor, domestic violence, the trial court noted the parties' conflicting testimony about whether Father ever had been physically violent with Mother. Regardless of that dispute, the trial court found future violence unlikely, reasoning:

> * * * The parties had multiple parenting time exchanges with no apparent issues prior to Mother deciding at some point that she no longer wished to have direct contact with Father. As the parties presently do not have any contact with each other during exchanges, since Mother arranges for others to provide the transportation, it seems unlikely that domestic violence would

occur in the future.

(June 21, 2021 Order at 6.)

{¶ 12} With regard to the second factor, the trial court observed that since November 2015 the child primarily had resided with Mother in Florida, while also spending about 12 weeks a year in Ohio for Father's parenting time.

{¶ 13} As for the third factor, the trial court noted that the proposed Florida court was about 900 miles away, necessarily inconveniencing one of parties.

{¶ 14} The trial court then turned to the fourth factor, the relative financial circumstances of the parties. It reasoned:

Father testified that he makes approximately $47,000 per year. Father also testified that he borrowed over $85,000 in loans while attending school, part of which went toward supporting Mother and the child when they resided in Ohio together after Mother quit her job. Father also expends over $10,000 per year in travel expenses to exercise his parenting time.

Mother testified that she has been a full time student and has not had income in 3 years. Mother previously was employed making around $40,000 in Florida before voluntarily quitting to go to school. Mother received a $100,000 "restriction free" loan from a private individual, and took out a line of credit against her home to finance this ongoing litigation.

The Court does not find the financial circumstances of the parties to be so different as to factor strongly in the court's decision. The Court does not find that factor to be dispositive.

(*Id.*)

{¶ 15} With regard to the fifth factor, the trial court noted the lack of an agreement between the parties as to which state should exercise jurisdiction.

{¶ 16} On the sixth factor, the nature and location of needed evidence, the trial court noted Mother's belief that much of the evidence is in Florida, where the child spends the most time. The trial court reasoned, however, that relevant evidence is located in Ohio and Florida and that out-of-state evidence could be presented by deposition, telephone, audio-visually, or by other means. Although an in camera interview of the child might be needed, the trial court reasoned that it could be accomplished during one of the child's visits with Father in Ohio.

{¶ 17} As for the seventh factor, the ability of each state's court to decide the matter expeditiously and the procedures necessary, the trial court reasoned:

This Court has presided over this case since it was initiated in November 2015, through multiple rounds of litigation. However, the filing of multiple Motions to Transfer and resultant objections/motions to set aside have essentially precluded this case from moving forward on the pending motions for over two years.

Although Mother contends that there have been no "substantive" proceedings in this matter, this Court has held multiple hearings, is familiar with the history of the case and is ready to proceed toward a final resolution with the scheduling of a hearing. While a Florida Court could review the file and familiarize itself with the case, this Court already has that familiarity, has the file on hand and is ready to proceed. This Court has the requisite technical facilities necessary for presentation of evidence and testimony

which may be located out of state.

(*Id.* at 7-8.)

{¶ 18} Concerning the eighth factor, the familiarity of each state's court with the facts and issues in the pending litigation, the trial court found:

As previously stated, this Court has presided over this case since it was initiated in November 2015. There has been near perpetual litigation pending within this matter during this time frame. This Court is familiar with the history of the case, and is ready to proceed toward a final resolution with the scheduling of a hearing. The Magistrate noted that she is well-versed in the history of the case at this point. (Tr. 120).

Furthermore a Guardian ad Litem has been appointed to this case and has conducted a thorough investigation over the course of nearly 4 years and has written multiple substantive reports and recommendations. While the GAL may need to conduct further investigation to update his reports, a transfer to Florida would not alleviate this. Further, if the Florida Court would appoint a new GAL, that GAL would essentially have to begin a new investigation in its entirety, with no familiarity with the parties, child, or issues pending. The present GAL has conducted a thorough investigation of this matter over multiple years and has a strong familiarity with the parties, child and pending issues. If this case were to be heard in Florida, parties may retain new counsel in Florida unfamiliar with the history and may appear in front of yet another judge or magistrate with no present knowledge of the facts or issues pending.

(*Id.* at 8.)

{¶ 19} Having conducted its independent review and examined each of the eight factors, the trial court concluded:

After a review of the statutory factors, the Court finds that Ohio is not an inconvenient forum, and has had jurisdiction over this matter for multiple years. The Court recognizes that at this point in time the child has spent more time in Florida than Ohio, and her ties to Florida continue to grow as she attends school and spends more time in that state. However, there has been near perpetual litigation pending in this Court since this matter was initiated in 2015. Other than the approximately six (6) days between Father withdrawing his custody motions on June 21, 2019 and re-filing his motions on June 27, 2019, Father has had motions pending in this Court for nearly 3 years that have not been heard due to the jurisdictional challenges. This Court is the most familiar with the parties and issues and is ready to proceed. The Guardian ad Litem has been involved with this case for nearly four years, has conducted thorough investigation and has written multiple substantive reports, and is familiar with the parties and child. Therefore, this Ohio Court is in the best position to hear this matter, is the most familiar with the parties and the issues, and shall maintain jurisdiction.

(*Id.*)

{¶ 20} On appeal, Mother addresses each of the eight statutory factors in an attempt to establish an abuse of discretion by the trial court. With regard to the first factor, Mother admits that she never filed any domestic-violence charges. Nevertheless, she

cites her testimony about Father being "obsessive" and "controlling" and about alleged physical altercations, which Father denied. But regardless of the truth of Mother's allegations, the trial court reasonably found future domestic violence "unlikely" because Mother no longer directly participates in parenting exchanges. That being so, the trial court implicitly found no concern about which state best could protect the parties and the child.

{¶ 21} With regard to the second factor, Mother notes that the child resided in Ohio until reaching 15 months of age. Since then, Mother and the child have resided in Florida, with the child returning to spend about 12 weeks a year with Father in Ohio. Mother cites cases in which jurisdictional transfers have been ordered where a child has resided in another state for less time than the child at issue here. Therefore, Mother contends the trial court abused its discretion in not giving sufficient weight to this factor. But the precise weight to give to each factor was for the trial court to decide. The trial court properly recognized that the child had lived in Florida since 2015, while spending a meaningful amount of time in Ohio each year.

{¶ 22} As for the third factor, the trial court considered the 900-mile distance between the Florida and Ohio courts, which necessarily inconveniences one of the parties. Mother again cites cases involving jurisdictional transfers where the distance was less. Mother also suggests that Father could coordinate his court appearances in Florida with his travel to pick up their child for parenting time. On this record, however, it is speculative to suggest that a Florida court would, or reasonably could, coordinate court proceedings to coincide with Father's parenting-time pick-ups. And the fact that other courts have approved jurisdictional transfers where the distance at issue was less does

not demonstrate an abuse of discretion here. Each case is fact-specific and requires a decision based upon consideration of all eight factors.

{¶ 23} With regard to the fourth factor, the parties' relative financial situations, Mother testified that she owned a home in Florida free and clear when she arrived there in 2015. She voluntarily quit a $40,000 per year job in Florida to attend law school. At the time of the hearing, she had graduated and was preparing for the bar exam. Although she was not yet employed, she received government assistance as well as rental income of approximately $7,500 per year. Mother also had proceeds remaining from a $100,000 loan that she could use as she pleased. As for Father, he earned about $47,000 per year and was repaying $85,000 in loans he had taken out while with Mother. Father testified that he spent about $1,100 per month for rent and averaged more than $1,000 per month for travel expenses to Florida for parenting-time exchanges. Notwithstanding Mother's argument to the contrary, we see nothing unreasonable in the trial court's determination that the parties' financial situations were not significantly different. Although Father was employed, his salary was modest and he did not appear to have much discretionary income. Mother also had little income and appeared to be living in part on borrowed funds, with hopes of employment after taking the bar exam.

{¶ 24} As for the fifth factor, Mother acknowledges that the parties disagree about whether jurisdiction should be transferred to Florida. Mother criticizes the trial court, however, for observing that she acquiesced in the trial court's exercise of jurisdiction for a substantial period of time. Although not stated in the trial court's opinion, Mother contends the trial court implicitly used her failure to seek a transfer sooner against her, thereby abusing its discretion. We disagree. The mere fact of delay by Mother in seeking

a transfer of jurisdiction to Florida does not appear to us to have been a substantial factor in the trial court's decision.

{¶ 25} With regard to the sixth factor, the nature and location of the evidence, Mother contends the majority of the relevant evidence and witnesses related to the child are in Florida. In particular, Mother mentions the child's home life, schooling, and extra-curricular activities in Florida. She also mentions the maternal grandfather, neighbors, family friends, and others being located there. While acknowledging that means exist to submit out-of-state information to the trial court, Mother contends it would be less burdensome and expensive for Father to submit his Ohio-based evidence to a Florida court. We agree with Mother that the majority of the relevant evidence likely would be located in Florida, where the child resides 40 weeks a year. It is true, however, that the child spends 12 weeks a year in Ohio, interacting with Father's relatives and others. The trial court also correctly noted that procedures exist for out-of-state evidence to be presented by deposition, telephone, audio-visually, or by other means. Nevertheless, an objective examination of the record results in this factor weighing in favor of a transfer to Florida.

{¶ 26} Concerning the seventh factor, the trial court noted that multiple hearings had been held since 2015, that it was familiar with the case and its lengthy history, and that it was ready to resolve the case by conducting a final hearing. Mother challenges the trial court's statement about multiple hearings but acknowledges that at least two "contested hearings" have been conducted. Mother also argues that a Florida court could handle the matter expeditiously and facilitate the presentation of evidence located in Ohio. In our view, the trial court reasonably found that this factor weighs in Father's favor.

Although Mother questions how much "litigation" has occurred in Ohio, the trial court certainly has a degree of familiarity with the case and the issues, having presided over it for several years. The trial court also noted that it was ready to proceed to a final hearing on the pending custody issues and that it could facilitate the presentation of evidence located in Florida.

{¶ 27} Finally, as for the eighth factor, Mother reiterates her belief that a Florida court easily could familiarize itself with the issues. She notes too that a different magistrate now is involved and that the guardian ad litem will need to update his most recent report due to the passage of time. Mother contends these facts militate against finding that the trial court's familiarity with the case favors retaining jurisdiction. We disagree. The trial court reasonably found that this factor favors Father. The trial court itself has been involved with the case since 2015 and indisputably has greater familiarity with it than a Florida court. The trial court noted that the current magistrate also now has familiarity with the issues. And the guardian ad litem has been involved with the parties and the child for years. Although a new guardian ad litem could be appointed in Florida, the record supports a finding that the current guardian ad litem has a significant history with the parties and the issues.

{¶ 28} In short, the record reflects that the trial court thoroughly evaluated the evidence in light of the statutory factors. In so doing, it recognized that the child's growing connection to Florida over the years. The trial court also found, however, that it was most familiar with the parties and the issues and was ready to proceed expeditiously to a final judgment. Having conducted our own review, we cannot say the trial court abused its discretion in continuing to exercise jurisdiction. The trial court's decision is not

unreasonable, arbitrary, or unconscionable. Accordingly, Mother's assignment of error is overruled.

### III. Conclusion

{¶ 29} Having overruled Mother's assignment of error, we affirm the judgment of the Montgomery County Common Pleas Court, Juvenile Division.

. . . . . . . . . . . . .

WELBAUM, J. and LEWIS, J., concur.

Copies sent to:

Amy R. Blair
D.M.F.
Kenneth J. Krochmal, GAL
Hon. Helen C. Wallace