CITY OF TOLEDO, APPELLEE, *v.* SOLDIER, JR., APPELLANT.

(No. 4923—Decided February 20, 1956.)

*Mr. Nicholas Walinski,* for appellee.
*Mr. Steven L. Markowski,* for appellant.

CONN, J. This is an appeal on questions of law from a judgment of the Common Pleas Court affirming that of the Municipal Court, wherein the defendant was found guilty of

violating the provisions of the Toledo Traffic Code, Section 21-6-8 of Chapter 21. That section provides as follows:

"No person shall operate a vehicle * * * without due regard for the safety and rights of pedestrians and drivers and occupants of all other vehicles * * * and so as to endanger the life. limb or property of any person."

In the affidavit, the defendant was charged with unlawfully operating a motor vehicle, June 11, 1955, at 1:25 p. m., upon a public highway, namely at "Burger Consaul" in the city of Toledo, county of Lucas, Ohio, without due regard, contrary to the form of the statute or ordinance in such case made and provided.

The reverse side of the affidavit contains the following comment, presumably made by the police officers making the arrest:

"Sir: At 1:25 p. m., June 11, 1955, we were attracted to a 1950 Ford at Burger and Consaul, Eli made right turn off Burger onto Consaul with a squeal of the right tire, he turned and saw us and proceeded east on Consaul to Woodford, 25-30 miles per hour, turned left on Woodford one block and turned left on Whittemore, we turned on our red light when we went through the intersection of Valentine, he then slowed down, this chase was at a speed of 30-35 m. p. h. Eli stated he was going to the corner of Bakewell and Bogar to buy some ice cream. Streets were very heavily covered with parked autos on both sides of these streets."

The testimony of Officer James Tierney confirmed the foregoing statement, and, in addition, the officer stated that the streets were dry and "parking was very congested on Whittemore"; that there were no pedestrians and no traffic except a girl on a bicycle on the sidewalk; and that the girl came from the sidewalk in front of a parked car.

On cross-examination, the officer testified further that when he first observed the girl she was riding a bicycle on the sidewalk; and that she came down a driveway, but stayed within the line of parked cars.

Officer Henry Terry substantially corroborated Officer Tierney's testimony. He further testified that when they turned on the red light, defendant slowed down; that they were between a half block and a block behind defendant; that they had no "ac-

curate clock" on defendant; and that the speed limit in the area was 25 miles per hour.

On cross-examination, the officer testified that defendant had stopped at Consaul and Burger waiting for traffic; that defendant made a right turn from a dead stop, proceeding east on Consaul; that there was another car between their car and defendant's automobile; and that they put on their red lights but did not blow their siren.

The defendant testified that he was on his way to work at the time of his arrest but decided to go down to the corner of Bogar and Bakewell to get some refreshments, taking the route on Whittemore; that he left his mother off at Burger near Consaul, stopped to let a car pass, turned right on Consaul, drove on Consaul to Woodford (a distance of two blocks), turned left onto Whittemore (a distance of one block), proceeded on Whittemore to Bakewell (a distance of three blocks), turned left onto Bakewell and, for the first time, heard the siren and then pulled to the curb.

Defendant testified further that his speed on Consaul was 20 to 25 miles per hour; that after he turned onto Whittemore there was a slow sign at the intersection of Caledonia, which he observed; that his automobile seemed to jerk in third gear, so he put it in second and then his speed from there was 20 miles per hour until he stopped at the curb; that he saw the girl on a bicycle, on the sidewalk, after he turned onto Whittemore, and she came down a driveway and "was in the motion of stopping" in front of a parked car; and that at that time he had his car in second gear and was ready to stop if it were necessary.

Defendant's testimony as to manner of driving and speed was substantially corroborated by two witnesses called in his behalf.

The evidence also discloses that from the time defendant started at Burger and made his right turn onto Consaul to the time he turned left onto Bakewell, where he stopped at the curb, he had traveled six blocks and had made four turns at intersecting streets. The "chase" referred to in the statement made by the officers must be interpreted in the light of these facts.

The officers did not give the defendant a traffic ticket but called the "wagon" and had defendant taken to the police sta-

tion, leaving his automobile at the curb of the street. The motion of defendant for a new trial was overruled, defendant's driver's license was suspended for 90 days, and he was ordered to pay the costs taxed at $17.90.

The principal assignments of error relied on by defendant are that the finding and judgment of guilty, entered by the trial court, are contrary to law and manifestly against the weight of the evidence, and that the Court of Common Pleas erred in affirming the judgment and sentence of the Municipal Court and rendering judgment against defendant.

The charge laid against defendant appears to be grounded on the ordinance, Section 21-6-8, which we have set out above, prohibiting the "reckless operation of vehicles."

In the affidavit filed by the police officers, the defendant is charged with operating a motor vehicle upon a public highway without due regard. The affidavit does not include the condition contained in the ordinance or in Section 4511.20 of the Revised Code, to wit:

"* * * so as to endanger the life, limb, or property of any person while in the lawful use of the streets or highways."

It is a general rule that, where an affidavit charges an offense in the language of the statute which defines the offense, the affidavit will be held sufficient "to inform the accused fully and distinctly of the facts upon which the state relies." 21 Ohio Jurisprudence, 762, Section 70.

The state Constitution, Section 10, Article I, expressly provides that the accused in any trial, in any court, shall have the right "to demand the nature and cause of the accusation against him."

In the instant case, the defendant went to trial on his plea of not guilty, without interposing any objection to the form or substance of the affidavit. Under such circumstances, it follows that want of definite or sufficient averments of the charge laid could not be considered prejudicial, as the doctrine of waiver applies.

The record discloses also that testimony was introduced in the trial court relative to the speed of defendant's vehicle immediately prior to his arrest. No rate of speed is set forth in the affidavit and no charge made of excessive speed.

It is a recognized rule that, where an accused is charged with a particular offense, he can not be convicted of another, unless the latter be included in the former. The due-regard ordinance, also referred to as "reckless operation of vehicles," and the speed ordinance, Section 21-6-7, Toledo Traffic Code (Section 4511.21, Revised Code), define separate offenses, and the accused can not be convicted on speed alone where the charge is laid under the due-regard ordinance. This general rule is given special emphasis where the penalties are different. See *City of Springfield* v. *Hanlon,* 30 Ohio Law Abs., 596; *City of Columbus* v. *Petty,* 27 Ohio Law Abs., 249; *City of Columbus* v. *Brown,* 31 Ohio Law Abs., 530; *City of Akron* v. *Hull,* 72 Ohio App., 449, 52 N. E. (2d), 877.

The Uniform Traffic Code of Ohio contains penal provisions as to two general classes of traffic violations. In one class, a penalty is provided where the accused fails to observe a specific provision of the statute, in which event the accused is subject per se to the prescribed penalty. In the other, a penalty is prescribed where the accused fails to observe some general rule of conduct. *Koppelman, a Minor,* v. *Springer, a Minor,* 157 Ohio St., 117, 104 N. E. (2d), 695; *Eisenhuth* v. *Moneyhon,* 161 Ohio St., 367, 119 N. E. (2d), 440.

The instant case appears to fall into the latter class, and whether the due-regard provisions of the ordinance have been violated depends on the facts and circumstances disclosed by the evidence.

We call attention to the recent case of *State* v. *Martin,* 164 Ohio St., 54, 128 N. E. (2d), 7. In that case, the defendant was convicted of manslaughter in the second degree, and the Supreme Court, in reviewing the record, construed and applied the provisions of Sections 4511.18 and 4511.20 of the Revised Code. We quote the first paragraph of the syllabus:

"Section 4511.20, Revised Code, providing that 'no person shall operate a vehicle * * * without due regard for the safety and rights of pedestrians * * * so as to endanger the life * * * of any person while in the lawful use of the * * * highways,' is a law applying to the 'use or regulation of traffic,' within the purview of Section 4511.18, Revised Code, and the phrase, 'without due regard,' as used in Section 4511.20, Revised Code,

means that a person must operate such vehicle in the same manner as would a reasonably prudent person under similar circumstances.''

The evidence is undisputed that the streets over which defendant operated his vehicle, after turning from Burger into Consaul, were wholly free from any moving traffic, pedestrian or vehicular, excepting defendant's vehicle, the car between defendant's automobile and that of the police officers, and the girl on the bicycle who did not enter the traveled portion of the street. Furthermore, on the whole record in this case and upon the evidence adduced, it clearly appears that the defendant, in operating his automobile, did so in the ''same manner as would a reasonably prudent person under similar circumstances.''

Diligence on the part of police officers in enforcing the provisions of the traffic code is universally commended. Ordinances and statutes, designed to protect the traveling public on the streets and highways, must be at all times impartially enforced; and where violations occur the penalties prescribed must be strictly imposed. However, it should be said, with equal emphasis, that, in every instance, the legal rights of the accused should be protected, in order that the dignity and honor of the law prevail.

It is the conclusion of the court that the evidence in this case does not have the probative force and certainty which the law requires to support the finding and judgment that the defendant was guilty as charged, and that the judgment of the Common Pleas Court, affirming such judgment, is contrary to law.

In view of the conclusion we have reached, it becomes unnecessary to consider the remaining assignments of error.

The judgment of the Court of Common Pleas is reversed, and the defendant discharged. The cause is remanded to the Municipal Court for execution for costs.

*Judgment reversed and cause remanded.*

DEEDS and FESS, JJ., concur.