[Cite as *State v. White*, 2021-Ohio-2703.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

State of Ohio

    Appellee

v.

Rick White

    Appellant

Court of Appeals No. CA028901

Trial Court No.  TRD 1908570

**<u>DECISION AND JUDGMENT</u>**

Decided:  August 6, 2021

* * * * *

Christopher B. Epley, Vandalia Prosecuting Attorney, for appellee.

Byran K. Penick and Masallay Komrabai-Kanu, for appellant.

* * * * *

**Facts and Procedural Background**

{¶ 1} Appellant, Rick White, was found guilty pursuant to R.C. 4511.213(A)(1) after failing to use "due caution" when approaching a stationary public safety vehicle displaying emergency lights. A trial was held in the Municipal Court of the city of Vandalia, Ohio, Traffic Division, on December 12, 2019. The magistrate issued a decision on February 14, 2020. Objections to the Magistrate's Decision were filed on April 24, 2020.  On August 25, 2020, the trial court overruled appellant's objections and

issued a final judgement, finding appellant guilty of Failure to Yield to an Emergency Vehicle. Appellant filed a timely notice of appeal.

{¶ 2} On September 17, 2019, appellant was traveling northbound on Dayton International Airport Access Road, north of Stonequarry Road in the city of Vandalia, Montgomery County, Ohio. Airport Access Road is a two-lane highway, running north and south, with two lanes for each direction of travel. Trooper Hutchison was on duty working with Motor Carrier Inspectors for the Department of Transportation issuing traffic citations for vehicles failing to "move-over-slow-down" when approaching emergency vehicles. The purpose of the citations was to enforce the "move-over-slow-down" law after a recent death of a co-worker.

{¶ 3} Trooper Hutchison was positioned approximately 75 feet in front of the Department of Transportation's marked, white Tahoe. The vehicle displayed red overhead flashing lights that were visibly clear to oncoming traffic as the weather conditions on the day in question were dry and it was daylight. The emergency vehicle was conducting a traffic stop on a commercial semi-trailer.

{¶ 4} At approximately 3:28 p.m., Trooper Hutchison had a clear line of sight of appellant's vehicle as it cleared a curve in the road. When he saw appellant's vehicle, appellant was traveling in the right lane at 55 mph, and the commercial vehicle was stopped on the right shoulder. There was another vehicle traveling adjacent to appellant, which prevented him from properly changing lanes. Appellant was traveling at the posted speed limit and did not reduce his speed below 55 mph. The court took judicial notice of the efficacy of the LTI laser.

2.

{¶ 5} After appellant did not reduce speed or change lanes, Trooper Hutchison motioned for him to pull over to the right shoulder of the road. He issued appellant a citation for R.C. 4511.213, failing to use "due caution" when approaching a stationary public safety vehicle displaying an emergency light. Trooper Hutchison did not specify which provision appellant was in violation of because the program that writes the tickets does not allow officers to write the subsection in it. Over the objections of the defendant, Trooper Hutchison concluded that the only difference between R.C. 4511.213(A)(1) and R.C. 4511.213(A)(2) is that subsection one is for a two-lane highway and the other is for a one-lane highway.

{¶ 6} Before cross-examination of Trooper Hutchison, defense counsel posed the question of which subsection they should defend against, and the prosecution responded that it was pursuing its case under R.C. 4511.213(A)(1). On cross-examination, Trooper Hutchison was questioned as to his Statement of Facts in the citation, which contained: "THERE WAS A VEHICLE IN THE LEFT LANE, HOWEVER THE DRIVER COULD HAVE SLOWED DOWN." (Emphasis sic.) Trooper Hutchison testified that in his twenty-seven years of experience, 55 mph is a prime facie reasonable speed limit, however, in his opinion, the driver could have slowed down. Nevertheless, Trooper Hutchison admitted that he lacked knowledge of how fast appellant was traveling prior to appellant noticing the safety vehicle. Therefore, it remained unknown as to whether appellant had been traveling at a higher rate of speed, then reduced speed upon approaching the emergency vehicle. After acknowledging that the statute says to "change

3.

lanes, if possible," Trooper Hutchison again opinioned that traveling 55 mph per se would not be reasonable under these conditions.

{¶ 7} After Trooper Hutchison's testimony, appellant motioned for dismissal pursuant to Crim.R. 29 on the basis that the state had not provided evidence to support a violation of 4511.213(A)(1). The state opposed the motion, arguing that the defendant did not proceed with "due caution," and since his speed prior to approaching the curve was unknown, it could not be determined whether he could have slowed down and got behind the car next to him. The court overruled the motion.

{¶ 8} Defense counsel proceeded to call the appellant, Rick ("Colonel") White, to testify. Appellant is a retired Lieutenant Colonel, enlisted in active duty in 1972 for three years, returning to State service as a member of the State Defense Force in 2002, and retiring from the military in February 2019. Colonel White testified he has gone forty-two years without a traffic violation prior to this citation. On direct examination, he testified that he thereafter returned to the incident site and attempted to recreate the circumstances of his line of sight when the emergency vehicle became visible. Appellant took photographs of the Stonequarry Road Bridge and just north of the bridge to where the straightway for Airport Access Road began. Additionally, appellant obtained aerial images from Google Maps of the location.[1]

{¶ 9} After further examination of these images, Exhibit E of the south side of the bridge did not show to northbound travelers where the inspection vehicle was pulled over

---

[1] These exhibits were admitted without objection.

4.

due to the curve, bridge, and vegetation line. The bottom photograph in Exhibit E was taken just north of the inspection vehicle, revealing visibility was blocked until approximately 600 feet after rounding the curve. After review of the Google Maps images, White concluded that he had approximately 7-8 seconds and 600 feet to react to the emergency lights and change lanes after clearing the curve and approaching the straightway on Airport Access Road. Appellant testified that the car next to him braked and at that point, there was no time left to slow down and safely change lanes; his only option was to move over as far as he could in his own lane. On cross-examination, he further detailed that the vehicle next to him was initially traveling faster than him but braked after seeing the trooper. Given his estimates and that he was traveling at the posted speed limit, Colonel White believes he was driving in a reasonably safe manner in compliance with the statute.

{¶ 10} When testimony concluded, appellant renewed his Crim.R. 29 motion to dismiss as a matter of law because the state presented evidence that appellant failed to slow down, which is not required by statute. The court overruled the motion, declaring the "case law is pretty clear." Appellant was subsequently found guilty under R.C. 4511.213(A)(1). This appeal follows.

## Law and Argument

{¶ 11} Appellant sets forth the following assignments of error:

I. Appellant's conviction is against the manifest weight of the evidence.

II.  The application of R.C. 4511.213(A)(1) to appellant is unconstitutional.

{¶ 12} "When reviewing objections to a magistrate's decision, the trial court must undertake an independent de novo review of the matters objected to in order 'to determine whether the magistrate has properly determined the factual issues and appropriately applied the law.'" *Fraley v. Ohio Dept. of Rehab. & Corr.*, 139 N.E.3d 1264, 2019-Ohio-2804, ¶ 9 (10th Dist.), quoting *Williams v. Ohio Dept. of Rehab & Corr.*, 10th Dist. Franklin No. 18AP-720, 2019-Ohio-2194, ¶ 16, citing Civ.R. 53(D)(4)(d). However, "the standard of review on appeal from a trial court judgment that adopts a magistrate's decision varies with the nature of the issues that were (1) preserved for review through objections before the trial court and (2) raised on appeal by assignment of error." *Williams* at ¶ 16, quoting *Matter of Guardianship of Schwarzbach*, 10th Dist. Franklin No. 16AP-670, 2017-Ohio-7299, ¶ 14.

{¶ 13} Applying the "manifest weight" standard, we sit as the "thirteenth juror," and may disagree with the factfinder's resolution of conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We review the entire record, weigh the evidence and any reasonable inferences, consider the credibility of witnesses, and determine whether the factfinder lost its way in resolving conflicts in the evidence, creating such a manifest miscarriage of justice that reversal is necessary. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983). Reversal based on the manifest weight of the evidence is reserved for only the

6.

exceptional case "in which the evidence weighs heavily against conviction." *Thompkins* at 387, quoting *Martin* at 175.

{¶ 14} In his First Assignment of Error, appellant challenges his conviction as improperly adding a statutory predicate and an additional requirement that a motorist must slowdown in order to exercise "due caution." R.C. 4511.213(A)(1), in relevant part, states:

> (A)  The driver of a motor vehicle, upon approaching a stationary
> public safety vehicle, emergency vehicle, road service vehicle, waste
> collection vehicle, vehicle used by the public utilities commission to
> conduct motor vehicle inspections in accordance with [sections of the Ohio
> Revised Code], or a highway maintenance vehicle that is displaying the
> appropriate visual signals by means of flashing, oscillating, or rotating
> lights, as prescribed in [Ohio Revised Code] shall do either of the
> following:
>
> (1)  If the driver of the motor vehicle is traveling on a highway that
> consists of at least two lanes that carry traffic in the same direction of travel
> as that of the driver's motor vehicle, the driver shall proceed with due
> caution and, if possible and with due regard to the road, weather, and traffic
> conditions, shall change lanes into a lane that is not adjacent to that of the
> stationary public safety vehicle, * * *.

This subsection *expressly* excludes language about reducing speed.

7.

{¶ 15} The omission of this language was intentional, as R.C. 4511.213(A)(2) explicitly requires a motorist to reduce speed. R.C. 4511.213(A)(2) provides:

(2) If the driver is not traveling on a highway of a type described in division (A)(1) of this section, or if the driver is traveling on a highway of that type but it is not possible to change lanes or if to do so would be unsafe, the driver shall proceed with due caution, *reduce the speed* of the motor vehicle, and maintain a safe speed for the road, weather, and traffic conditions. (Emphasis added)

{¶ 16} The trial court's decision convicting appellant was based on an alleged violation of 4511.213(A)(1), yet the court concluded that appellant had an affirmative obligation to reduce the speed of his vehicle. The magistrate's finding that "4511.213(A)(2) amplifies a defendant's obligation in proceeding with due caution to include slowing down his or her vehicle …" directly contradicts the plain language of subsection (A)(1).

{¶ 17} Appellant has properly objected to the trial court's decision to adopt the magistrate's judgment as its own. Upon review, we find the trial court's decision to adopt the magistrate's decision is error and conclude that the magistrate misapplied the facts of this case to the applicable law.

{¶ 18} R.C. 4511.213 does not define "due caution", however, the Ohio Supreme Court has held that "due caution" refers to a driver's obligation to "operate his motor vehicle in the same manner as would a reasonably prudent person under similar circumstances." *State v. Martin*, 164 Ohio St. 54, 59, 128 N.E.2d 7 (1955). In *Martin*, the

8.

state argued the defendant was recklessly operating a vehicle in violation of R.C. 4511.20. *Id.* at 58. Reduced to its lowest terms, R.C. 4511.20 states "no person shall operate a vehicle * * * without due regard for the safety and rights of pedestrians * * * and so as to endanger the life * * * of any person while in the lawful use of the * * * highways." The court correctly concluded that the defendant was not using "due regard" as a reasonably prudent person would when he drove on the berm for a distance of over 200 feet and killed a pedestrian. *Id.* at 58.

{¶ 19} In the absence of a statutory definition, courts have routinely applied the standard of due caution as exercised by a reasonably prudent person under the circumstances of the case. In *Colon*, the court held there was insufficient evidence to support a violation of R.C. 4511.213. *City of Cleveland v. Colon*, 2020-Ohio-1282, 153 N.E.3d 680, ¶ 23 (8th Dist.). There, the defendant had "pulled over to the far right to provide the oncoming car sufficient space to pass" and "slowed down to practically crawling speed." *Id.* at ¶ 19. The court found that the defendant acted as a reasonable person would by proceeding with "due caution" and reversed. *Id.* at ¶ 23, 27. Likewise, in *Shinaberry*, the court held R.C. 4511.213(A)(1) was "applicable to the circumstance and appellant was required to change lanes, if possible." *State v. Shinaberry*, 5th Dist. Tuscarawas No. 2003 AP 010005, 2003-Ohio-6796, ¶ 20.

{¶ 20} These decisions suggest although a court may consider a reduction of speed in determining due caution, no court has imposed a statutory predicate or requirement that a motorist *must* reduce speed to comply with the "due caution" requirement proscribed by R.C. 4511.213(A)(1), which is what the trial court did in this instance.

9.

Rather, a driver must exercise "due caution" and "changing lanes, if possible." This is determined in the context of what a reasonable driver would do under similar circumstances.

{¶ 21} Here, the trial court's decision was based solely on whether appellant slowed down, not whether he was a reasonably prudent driver. The testimony establishes that Airport Access Road was a "highway that consists of at least two lanes that carry traffic in the same direction of travel," therefore, appellant's circumstances fall within the express language of subsection (A)(1). While it is true that subsection (A)(2) requires a motorist to reduce speed when it is "not possible to change lanes or if to do so would be unsafe," the prosecutor elected to proceed under subsection (A)(1) and the trial court confined its analysis to that subsection. *Mag. Dec.* at 2. Thus, "due caution" may include slowing down, but it was not legally required pursuant to subsection (A)(1). To impose such a requirement, essentially changes the alleged violation of subsection (A)(1) to a violation of subsection (A)(2).

{¶ 22} Consequentially, we find the state's decision to pursue this matter under subsection (A)(1) to be outcome determinative. Appellant's only obligation was to proceed with "due caution and, if possible, with due regard to the road, weather, and traffic conditions," by changing lanes into a "lane that is not adjacent to that of the stationary public safety vehicle."

{¶ 23} Speed alone cannot support a finding of driving without due regard for safety. *City of Sylvania v. Badger*, 64 Ohio App.2d 78, 80, 411 N.E.2d 195, 197 (Ohio Ct.

App. 1978), quoting *City of Toledo v. Soldier,* 101 Ohio App. 273, 139 N.E.2d 631 (1956).

**{¶ 24}** At trial, the officer testified:

**{¶ 25}** Q:     Would you agree that a motorist traveling 55 mph in a posted 55 mph zone     is traveling at a prima facie reasonable speed?

**{¶ 26}** A:     Yes.

**{¶ 27}** As noted, R.C. 4511.213(A)(1) requires a driver, *if possible and with due regard to the road, weather, and traffic conditions, shall change lanes.*

**{¶ 28}** While the road conditions were clear and it was light out, the *traffic conditions*, by the Trooper's own testimony, prevented appellant from changing lanes. He testified:

> Q:  Would you agree with me Trooper that the vehicle that was in the left lane prevented Colonel White from getting over into the left lane as he passed the emergency vehicle?
>
> A:  Well, from my point of view, yes, it would have prevented him.

**{¶ 29}** The record also establishes that the trooper, in his Citation HP7 Statement of Fact indicated:

> THERE WAS A VEHICLE IN THE LEFT LANE, HOWEVER THE DRIVER COULD HAVE SLOWED DOWN.

11.

{¶ 30} Hence, appellant exercised due caution, acting as any reasonably prudent driver would, under the road, weather and traffic conditions as evidenced in this case, by driving the posted speed limit and positioning the vehicle as far over in his lane as he could without interfering with the adjacent lane of traffic.

{¶ 31} Contrary to the trial court's conclusion, the state has failed to establish that appellant violated R.C. 4511.213(A)(1). As a result, this court finds that the instant case arises to the level of an exceptional case where the conviction is against the manifest weight of the evidence. Accordingly, appellant's First Assignment of Error is sustained. Our resolution of appellant's First Assignment of Error renders appellant's Second Assignment of Error moot.

## Conclusion

{¶ 32} For the foregoing reasons, we reverse and vacate the August 25, 2020, decision of the Municipal Court of the city of Vandalia, Ohio, Traffic Division as against the weight of the evidence.  Appellant's conviction is vacated, and the Vandalia Municipal Court shall enter this acquittal upon its records and further notify the Ohio Bureau of Motor Vehicles. The state is ordered to pay the cost of this appeal pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. Pursuant to Ohio App.R. 30(A), the clerk of the Court of Appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the mailing.

Thomas J. Osowik, V.J.                                          _____
JUDGE

Christine E. Mayle, V.J.

_____
Gene A. Zmuda, V.J.                                             JUDGE
CONCUR.

_____
JUDGE

Judges Thomas J. Osowik, Christine E. Mayle, and Gene A. Zmuda, Sixth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.