[Cite as *Sowry v. Todd*, 2023-Ohio-1162.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY

| | | |
|---|---|---|
| RUBY ANN SOWRY, EXECUTOR OF THE ESTATE OF DOROTHY K. BOGGS, DECEASED | : | |
| | : | C.A. No. 2022-CA-22 |
| Appellant | : | Trial Court Case No. 90684A |
| v. | : | (Appeal from Common Pleas Court- Probate Division) |
| MARY LISA TODD | : | |
| Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on April 7, 2023

. . . . . . . . . . .

GREGORY M. GANTT & ERIK R. BLAINE, Attorneys for Appellee

ROBERT M. HARRELSON & WILLIAM M. HARRELSON, Attorneys for Appellant

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Ruby Ann Sowry, executor of the estate of Dorothy K. Boggs, appeals from a judgment of the Miami County Court of Common Pleas, Probate Division, which found that a purported written settlement agreement between Sowry and her sister, Mary Lisa Todd, was enforceable. For the following reasons, the probate court's judgment will be

reversed, and the matter will be remanded for further proceedings.

## I. Facts and Procedural History

{¶ 2} Sowry and Todd are the daughters of Dorothy Boggs, who is now deceased. Sowry is the older sister by several years. Prior to her death, Boggs had several bank accounts at various banks for which Sowry was named as a joint owner with rights of survivorship. According to the complaint, in early September 2019, Todd opened additional bank accounts that were titled in both Todd's and Boggs's names. Todd then caused Boggs to transfer money from the joint accounts with Sowry into the joint accounts with her. Soon thereafter, Todd transferred the money into accounts opened solely in Todd's name.

{¶ 3} Boggs died on October 5, 2019. Her will named Sowry as executor of her estate, and Sowry was appointed executor by the probate court. Boggs's will poured all of her assets into a previously-executed trust. Under the terms of the trust, Sowry would receive 70 percent of the trust assets and Todd would receive 30 percent.

{¶ 4} On August 19, 2020, Sowry, as executor, filed a declaratory judgment action against Todd, alleging that Todd had improperly taken control of money contributed solely by Boggs into Todd's and Boggs's joint account at Wright-Patt Credit Union. She further alleged that Todd had converted, embezzled, or otherwise improperly taken control of nearly $100,000 that had been contributed solely by Boggs in other joint accounts. Sowry sought a declaratory judgment that all the funds transferred from Sowry's and Boggs's joint accounts after September 1, 2019 – an amount equal to $98,267.97 – be deemed assets of the Boggs's estate.

**{¶ 5}** In her answer, Todd did not deny that the transfers occurred, but she claimed that they were done by Boggs knowingly and voluntarily. Todd asked that the court grant judgment in her favor, dismiss the complaint, and assess court costs and reasonable attorney fees against Sowry. Todd then sought judgment on the pleadings pursuant to Civ.R. 12(C), which the trial court denied. Todd appealed, but we dismissed for lack of a final appealable order. *Sowry, Exec. of the Estate of Dorothy K. Boggs v. Todd*, 2d Dist. Miami No. 2021-CA-6 (Decision & Final Judgment Entry, Mar. 29, 2021).

**{¶ 6}** After remand, the magistrate held a status conference during which the parties discussed discovery and potential mediation. In a later entry, the magistrate indicated that neither party supported mediation at that time. Disputes arose as discovery proceeded, leading Sowry to file a motion to compel discovery on September 9, 2021. Todd was deposed on September 15, 2021. On October 27, 2021, five days before the scheduled hearing on Sowry's motion to compel, Todd moved for mediation. Due to a scheduling conflict, Todd's counsel also moved to continue the discovery hearing. The magistrate rescheduled the hearing to January 5, 2022.

**{¶ 7}** On November 5, 2021, Sowry moved for summary judgment. She argued that admissions made by Todd during her deposition conclusively established that, before Boggs's death, Todd withdrew funds from joint and survivor accounts held with Boggs's that were contributed only by Boggs. Sowry argued that, as a matter of law, Todd had forfeited her survivorship rights to the funds, converting them to assets of Boggs's estate.

**{¶ 8}** The magistrate held a telephonic conference with the parties on November 10, during which the parties' attorneys expressed their positions as to the order in which

the magistrate should address the two pending motions.   Two days later, the magistrate issued an entry stating that he would first address the summary judgment motion and then, if necessary, rule on the motion for mediation.   The same day (November 12), Todd supplemented her motion for mediation.   She attached copies of text messages between her and Sowry in which the parties agreed to set up a mediation and Sowry expressed that she did not "want them to drag this out."

{¶ 9} After communicating several times by text message, Todd and Sowry had a 90-minute telephone conversation on Saturday, November 13, to discuss the litigation. During their discussion, the sisters orally agreed to settle the matter, and Todd's husband, Ryan Todd (a non-lawyer), prepared a written document to memorialize what he understood to be their wishes.   Ryan testified that he did not write down what Todd and Sowry said, but he understood the agreement to be that the sisters would split everything 50/50, pay their own attorney fees, and that it would resolve everything.

{¶ 10} The written agreement stated, in its entirety:

Settlement Letter and Agreement

We, herein after to mean Ruby Sowry and my sister, Mary Todd; have come to an agreement regarding the Estate and Trust of our mother Dorothy Boggs.   The purpose of this letter is to inform both of our attorneys of this agreement, and to direct them to put the following items into effect without any further delay or discussion, and with all speed.

1.  We have agreed to immediately settle the lawsuit currently under way regarding actions taken or directed by our mother, and our attorneys

are to cease and desist with any further action or procedures other than those needed to enact the points below, and settle the suit as quickly as possible.

2.  We agree that funds contained in accounts held jointly by Ruby Sowry and Dorothy Boggs as of her passing (in the approximate amount of $100,300.00 plus interest earned) are considered to be Ruby's sole property and are not to be part of the Estate or Trust in any way. They are to remain in Ruby's control, and pass to Ruby as soon as possible, subject to any formality of probate necessary.

3.  We agree that funds contained in accounts held jointly by Mary Todd and Dorothy Boggs and/or then moved into accounts held by Mary Todd as of Dorothy's passing (in the approximate amount of $98,773.00 plus interest earned) are considered to be Mary's sole property and are not to be a part of the Estate or Trust in any way. They are to remain in Mary's control, and pass to Mary as soon as possible, subject to any formality of probate necessary.

4.  We agree that all funds currently held by or due to the Estate be used in the following ways:

    a)  First, to pay all usual and customary expenses of the Estate, including but not limited to reimbursing Ruby for costs paid on behalf of the Estate from her funds in #2 above prior to the estate having funds of its own to do so.

b) Second, to pay the Estate attorney for usual and customary work performed for the Estate.

c) Third, all remaining funds are to pass into the Trust as per our mother's instructions.

5. We agree that the Trust will pay reasonable and customary costs related to its existence and function prior to the actions in #'s 6 through 8 below taking place.

6. We agree that Ruby will (if legally possible) forego or waive her right (other than to those specific items granted to Ruby in the Trust) as beneficiary to 70% of the assets of the Trust, and instead choose to receive only 50% of said assets.

7. We agree that Mary will receive as co-beneficiary the remaining 50% of the assets of the Trust.

8. We agree that if #'s 6 and 7 above are not legally possible, Ruby Sowry agrees to make a gift to Mary Todd following disbursement from the Trust an amount equal to 20% of the Trust assets, in order to effect the same result as #'s 6 and 7 above. If this result is a gift tax payable to Ruby, Mary agrees to reimburse her for 50% of the tax, thereby making them equal again.

9. We agree that any and all legal costs and attorney fees that have been or will be incurred by the Plaintiff as represented by Harrelson & Harrelson, LLP in the lawsuit noted above will be the responsibility of

Ruby Sowry, to be paid from funds in her control noted in #2, or from funds she receives as her final disbursement from the Trust.

10.   We agree that any and all legal costs and attorney fees that have been or will be incurred by the Defendant as represented by Gregory M. Gant, Co, LPA in the lawsuit noted above will be the responsibility of Mary Todd, to be paid from funds in her control noted in #3, or from funds she receives as her final disbursement from the Trust.

This agreement was prepared by Ryan Todd at the request of Ruby Sowry, based on a telephone conversation that took place between Ruby, Mary and Ryan on Saturday, November 13th, 2021.

This document has been reviewed by Ruby and Mary, and they both confirm that it reflects their wishes.   Original signed copies will be provided to both attorneys by close of business on Monday November 15th, 2021.

{¶ 11} The next day, Todd and her husband went to Sowry's home to review the document with her.   Sowry made no changes to the document Ryan had prepared, and the sisters signed and initialed six original copies of the document above their printed names.   Sowry did not identify the capacity in which she was signing.   The two provided copies of the purported agreement to their respective attorneys.

{¶ 12} Five days after the signings, on November 19, 2021, Todd filed a motion to enforce the settlement, arguing that the agreement reflected the wishes of the parties and that Sowry could not repudiate the agreement unilaterally.   Sowry opposed the motion, stating that "the proposed agreement is no agreement at all."   She contended that Todd

had pushed for a settlement after she had admitted to the material allegations at her deposition and was faced with responding to a motion for summary judgment. Sowry asserted that the resulting agreement was unenforceable due to a lack of consideration (Sowry was in a worse position than if she had simply dismissed the lawsuit), the agreement was procured through material misrepresentations by Todd, and the agreement was not enforceable against Sowry as executor of Boggs's estate. Todd disputed Sowry's representation of the sisters' communications and Todd's deposition testimony, and she replied that the parties' agreement met all the elements of an enforceable settlement agreement in this case.

{¶ 13} The magistrate conducted a hearing on Todd's motion to enforce the settlement agreement, during which Todd, Sowry, and Todd's husband testified. The parties generally agreed as to how they came to discuss a settlement and the preparation of the settlement agreement, but they provided some conflicting testimony about their understanding of the agreement. For example, they disagreed on whether they believed that the settlement agreement constituted a proposal to give to their attorneys (Sowry) or whether it was a final resolution to the litigation (Todd). The two also provided differing testimony as to whether any benefit or value had been provided to Sowry by Todd in exchange for Sowry's promises to Todd. Sowry testified that she received "nothing," whereas Todd and her husband stated that the benefits were the conclusion of the litigation, an end to further litigations costs, and the ability to "put our family back together." Todd and Sowry also expressed differing views regarding the capacity in which Sowry was acting when she signed the agreement. Following the hearing, the parties submitted

post-hearing memorandum.

**{¶ 14}** After considering the testimony and documentary evidence, the magistrate concluded that the settlement was enforceable. He found that Sowry had signed the agreement on behalf of the estate, the trust, and herself as beneficiary. As for consideration, the magistrate found "avoiding additional attorney fees, as well as ending a family struggle, to be sufficient consideration to enter into an agreement." Mag. Dec. 6. The court rejected Sowry's argument that, because attorney fees in an estate case are set by local rule and based on a percentage of the assets, there would not be additional fees because of the suit and, thus, nothing to avoid. The magistrate reasoned that Sowry's argument "completely ignores the fact that the litigation, if successful, will bring $100,000 into the estate, which will certainly increase the amount of the attorney fees under the local rule." Finally, the magistrate found there was no mutual mistake of fact regarding additional mediation.

**{¶ 15}** Sowry objected to the magistrate's decision on three bases: (1) the probate court had no jurisdiction over Sowry in her individual capacity or as trustee, and the estate was not a party to the settlement letter; (2) Todd provided no consideration, and the avoidance of future attorney fees was not consideration; and (3) there was a mutual mistake of fact as to the execution of the settlement letter and agreement. After a transcript of the hearing was prepared, Sowry filed supplemental objections, which raised the same arguments. On August 22, 2022, the trial court overruled the objections and granted Todd's request to enforce the settlement.

**{¶ 16}** Sowry appeals, raising four assignments of error.

## II. Trial Court's Factual Findings

{¶ 17} As an initial matter, we note that, in reviewing the magistrate's decision, the trial court apparently concluded that it was required to defer to the magistrate's factual findings. The trial court referenced the rationale underlying deference to the judicial officer who had the opportunity to view the witnesses and observe their demeanor. The court also quoted our statement in *Hoying*, in which we said: "Where the trial court conducted a de novo review of the evidence and did not take any additional evidence before adopting the magistrate's decision as its own, 'the judgment of the magistrate on issues of credibility is, absent other evidence, the last word on the issue for all practical purposes.' * * * Thus, we defer to the credibility determinations of the trial court." *Hoying v. Hoying*, 2d Dist. Darke No. 2021-CA-15, 2022-Ohio-2515, ¶ 83, citing *Mandelbaum v. Mandelbaum*, 2d Dist. Montgomery No. 21817, 2007-Ohio-6138, ¶ 103, quoting *Quick v. Kwiatkowski*, 2d Dist. Montgomery No. 18620, 2001 WL 871406, *4 (Aug. 3, 2001).

{¶ 18} The trial court misconstrued *Hoying*'s instruction. *Hoying* reiterated the standard of review for an *appellate court* when reviewing a trial court's judgment following the adoption of a magistrate's decision.

{¶ 19} The trial court's obligation is different. "When reviewing objections to a magistrate's decision, a trial court must conduct an independent review. This means, among other things, that a trial court is not compelled to defer to a magistrate's determinations regarding credibility." *In re R.S.H.-F.*, 2d Dist. Montgomery No. 29198, 2022-Ohio-549, ¶ 10, citing *Bass v. Bass*, 2d Dist. Montgomery No. 27832, 2018-Ohio-2043, ¶ 10, citing *In re A.O.*, 2d Dist. Montgomery Nos. 25807, 25996, 2014-Ohio-527,

¶ 11.   In conducting its independent de novo review, the trial court must evaluate whether the magistrate properly determined the factual issues and appropriately applied the law. *State v. White*, 2021-Ohio-2703, 176 N.E.3d 124, ¶ 12 (2d Dist.).   A trial court's review is limited to the magistrate's conclusions of law only when the objecting party fails to file a transcript of all relevant testimony.   *See, e.g., In re Guardianship of Igah*, 2d Dist. Montgomery No. 26416, 2015-Ohio-4511, ¶ 32; *Allread v. Allread*, 2d Dist. Darke No. 2010-CA-6, 2011-Ohio-1271, ¶ 18 ("If the objecting party fails to file a proper transcript of all relevant testimony, 'a trial court's review is necessarily limited to the magistrate's conclusions of law.' "), quoting *Dayton Police Dept. v. Byrd*, 2d Dist. Montgomery No. 23551, 2010-Ohio-4529, ¶ 8.

{¶ 20} In this case, Sowry does not challenge on appeal the trial court's adoption of the magistrate's factual findings, and many of the differences in the testimony are not pertinent to our analysis.   Accordingly, we accept the factual findings, as adopted by the trial court, in reviewing the issues before us.

### III. Enforceability of the Parties' Settlement Agreement

{¶ 21} Sowry's assignments of error mirror her objections in the trial court.   She claims that the trial court made reversible errors in determining that (1) the agreement was enforceable between Todd and Boggs's estate; (2) Todd gave any consideration to Sowry in exchange for Sowry's promise to dismiss the litigation and allocate funds to Todd; (3) the agreement was enforceable where the probate court lacked personal jurisdiction over Sowry individually or in her capacities as trustee and beneficiary of Boggs's trust; and (4) there was a meeting of the minds regarding the essential terms and

formation of the agreement. We find Sowry's second assignment of error (consideration) to be dispositive, and therefore focus on that issue.

**A. Standard of Review for Motion to Enforce a Settlement Agreement**

{¶ 22} "A settlement agreement is a contract designed to terminate a claim by preventing or ending litigation." *Hanahan v. DPA Dev., LLC*, 2021-Ohio-1212, 171 N.E. 3d 462, ¶ 52 (2d Dist.), quoting *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 660 N.E.2d 431 (1996). Such agreements are valid and enforceable by both parties and are favored in the law. *Waterfront, LLC v. Shia*, 2d Dist. Montgomery No. 29377, 2022-Ohio-3259, ¶ 12. "Once a settlement offer has been accepted, the settlement agreement is mutually binding; the settlement agreement cannot be set aside simply because one of the parties later changes its mind." *Rayco Mfg., Inc. v. Murphy, Rogers, Sloss & Gambel*, 2019-Ohio-3756, 142 N.E.3d 1267, ¶ 68 (8th Dist.).

{¶ 23} "Because a settlement agreement constitutes a binding contract, a trial court has authority to enforce the agreement in a pending lawsuit." *Infinite Sec. Sols., L.L.C. v. Karam Properties, II, Ltd.*, 143 Ohio St.3d 346, 2015-Ohio-1101, 37 N.E.3d 1211, ¶ 16. However, when the existence of a settlement agreement is in dispute, the trial court must conduct an evidentiary hearing prior to entering a judgment enforcing the purported agreement. *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 683 N.E.2d 337 (1997), syllabus.

{¶ 24} The standard of review applicable to a ruling on a motion to enforce a settlement agreement depends on the issue presented. *Muransky v. Miller*, 2d Dist.

Montgomery No. 28622, 2020-Ohio-4595, ¶ 13, citing *Al-Zubi v. Cosmetic & Implant Dental Ctr. of Cincinnati, Inc.*, 1st Dist. Hamilton No. C-190406, 2020-Ohio-3272, ¶ 7; *Wynn v. Waynesburg Rd. LLC*, 7th Dist. Carroll No. 17 CA 0921, 2018-Ohio-3858, ¶ 16; *Turoczy Bonding Co. v. Mitchell*, 2018-Ohio-3173, 118 N.E.3d 439, ¶ 15 (8th Dist.). Because it is the province of the trial court to resolve factual disputes, we will not overturn the trial court's factual findings regarding the alleged settlement if there is sufficient evidence to support its findings. *Muransky* at ¶ 13. When the issue is a question of contract law, we must determine whether the trial court erred, as a matter of law, in deciding to enforce (or not enforce) the settlement agreement. *See Montei v. Montei*, 2d Dist. Clark No. 2013-CA-24, 2013-Ohio-5343, ¶ 23; *Muransky* at ¶ 13. Questions of law regarding the existence of a settlement agreement are reviewed de novo. *Moton v. Schafer*, 6th Dist. Lucas No. L-21-1214, 2022-Ohio-3505, ¶ 16.

### B. Consideration

{¶ 25} The trial court concluded, as did the magistrate, that there was "sufficient consideration" for the parties' settlement agreement, reasoning that the sisters "desired to end a year and a half of litigation." Trial Ct. Decision. p. 7. The trial court cited to portions of Ryan's and Todd's hearing testimony indicating that the "value" that Todd provided to Sowry was the end to the litigation and that the sisters could "put the family back together." Tr. 71, 75, 97. We conclude that, as a matter of law, Todd did not provide any consideration to support an enforceable settlement agreement.

{¶ 26} "A settlement agreement, like any other contract, requires an offer, acceptance, consideration, and mutual assent between two or more parties with the legal

capacity to act." *Brewer v. Brewer*, 2019-Ohio-4674, 149 N.E.3d 178, ¶ 25 (8th Dist.), citing *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16, and *Rulli*, 79 Ohio St.3d at 376, 683 N.E.2d 337.

{¶ 27} It is well established that a contract is not binding unless supported by consideration. *Lake Land Emp. Group of Akron, LLC v. Columber*, 101 Ohio St.3d 242, 2004-Ohio-786, 804 N.E.2d 27, ¶ 16, citing *Judy v. Louderman*, 48 Ohio St. 562, 29 N.E. 181 (1891), paragraph two of the syllabus. "Courts may generally not inquire into the adequacy of consideration, which is left to the parties as 'the sole judges of the benefits or advantages to be derived from their contracts.' " *Digitalight Sys., Inc. v. Cleveland Clinic Found.*, 2022-Ohio-1400, 188 N.E.3d 1151, ¶ 32 (8th Dist.), quoting *Hotels Statler Co., Inc. v. Safier*, 103 Ohio St. 638, 644-645, 134 N.E. 460 (1921). Whether consideration exists at all, however, is a question of law for the court. *Williams v. Ormsby*, 131 Ohio St.3d 427, 2012-Ohio-690, 966 N.E.2d 255, ¶ 17.

{¶ 28} "Consideration may consist of either a detriment to the promisee or a benefit to the promisor." *Id.*, citing *Irwin v. Lombard Univ.*, 56 Ohio St. 9, 19, 46 N.E. 63 (1897); *Evans v. Evans*, 2d Dist. Greene No. 2022-CA-5, 2022-Ohio-2167, ¶ 14. A benefit has been defined as "some right, interest, or profit accruing to the promisor." *Id.* In contrast, a detriment "may consist of some forbearance, loss, or responsibility given, suffered, or undertaken by the promisee." *Id.* A promisee who refrains from doing anything that he or she has the right to do has provided consideration, regardless of whether there is any actual benefit to the promisor. *Harvest Land Co-Op, Inc. v. Hora*, 2d Dist. Montgomery No. 25068, 2012-Ohio-5915, ¶ 16. "Forbearance on the part of one party to enforce a

legal right, or a waiver of the same, may constitute consideration." *Id.*

{¶ 29} Consideration for a contract need not necessarily be recited or expressed in writing. *Harvest Land Co-Op, Inc.* at ¶ 14. Instead, it may be proved by parol evidence or "may be inferred from the terms and obvious import of the contract." *Id.*

{¶ 30} Gratuitous promises, however, are not enforceable as contracts, because they lack consideration. *Evans* at ¶ 14, citing *Williams*, 131 Ohio St.3d 427, 2012-Ohio-690, 966 N.E.2d 255, at ¶ 17, citing *Carlisle v. T & R Excavating, Inc.*, 123 Ohio App.3d 277, 283-284, 704 N.E.2d 39 (9th Dist.1997). This is true even if the promise is reduced to writing and evidences an intent by the promisor to be bound. *Carlisle* at 283; *Williams* at ¶ 17.

{¶ 31} We find *Carlisle* to be illustrative of circumstances where consideration is lacking. In that case, an excavation company owned solely by Thomas Carlisle agreed in writing to provide free labor, valued at $40,000, to construct a preschool for Thomas's then-wife, Janis, and two companies that she owned. Thomas's company also agreed to provide $29,800 in materials at cost. *Carlisle* at 281. Janis accepted the proposal. In anticipation of a possible divorce, the two prepared an additional document in which Thomas agreed to perform all the excavating and site work set forth in his prior proposal in a timely manner in repayment to Janis for past secretarial services she had provided to Thomas's company. The parties later separated, and the excavation and site work was abandoned halfway through the project. Another company completed the project, although a week late. Janis sued Thomas's company for breach of contract.

{¶ 32} The Ninth District reversed the trial court's judgment in favor of Janis due to

lack of consideration. The appellate court noted that Thomas had testified that he wanted to help Janis with the preschool and they had both agreed the preschool would be a good retirement benefit for them. The trial court had stated in its opinion that consideration was the "relationship" and that they both hoped to benefit from the preschool. The appellate court, however, held that "[a] desire to help cannot be consideration for a contract; rather, it is merely a motive." (Citations omitted.) *Id.* at 284. The appellate court continued: "Further, the possibility of sharing in the income from a spouse's business, which would be marital income, cannot be consideration for a contract because one is already entitled to share in marital income. No bargaining is necessary to obtain that which one already has. The decision to build the preschool to provide income later was more in the nature of a joint effort by Mr. Carlisle and Ms. Carlisle to obtain a single benefit together, than a bargained-for exchange. Finally, the relationship between Mr. Carlisle and Ms. Carlisle could not have been consideration for a contract." (Citation omitted.) *Id.*

{¶ 33} The Ninth District also rejected additional potential bases for consideration. It stated that the "promise of reimbursement for out-of-pocket costs, standing alone, was not a benefit or detriment supporting a contract." *Id.* Janis had not argued that her secretarial services were consideration for Thomas's company's promise, and "past consideration" could not support a contract. *Id.* at 285. In addition, the appellate court held that "mere gratitude" for Janis's secretarial services could not constitute consideration. *Id.* The court concluded that Janis had failed to establish that there was consideration for Thomas's company's promise to do free excavation and site work for

the preschool.

{¶ 34} Turning to the circumstances before us, Todd asserts on appeal that she provided adequate consideration in two respects: (1) by agreeing to give up her right to see the judicial process through, and (2) by avoiding future fees and litigation expenses. She also asserted before the trial court that the settlement allowed the family to restore their relationship. We find none of Todd's arguments availing.

{¶ 35} First, Todd argues that she "gave up the right to see the judicial process through." She points to *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, to support her contention that the right to pursue litigation in court has value, and she further argues that *Parker v. Smith*, 8th Dist. Cuyahoga No. 107711, 2019-Ohio-4346, a case upon which Sowry relies, also supports her position.

{¶ 36} *Hayes* involved the enforceability of an arbitration agreement signed by a 95-year-old when she entered a nursing home (although agreeing to arbitration was not a requirement of admission). By signing the arbitration agreement, the resident agreed to submit any future malpractice claims to arbitration and to waive her right to trial and to recover punitive damages and attorney fees. Although not raised in the propositions of law, the Ohio Supreme Court briefly addressed contractual consideration, rejecting the argument that the resident "gave up her right to trial and received nothing in return." *Hayes* at ¶ 42. The Court recognized that "[b]oth parties gave up their right to trial, as well as all correlating rights in the judicial process." *Id.* at ¶ 43.

{¶ 37} In *Parker*, an attorney appealed from the enforcement of a settlement agreement in a legal malpractice case. The clients originally agreed to settle the claim

in an agreed judgment entry under which the attorney would pay compensatory and punitive damages, plus interest. The parties further agreed that the clients would not enforce the punitive damages judgment if the attorney paid the compensatory damages plus interest according to an agreed payment schedule. If the attorney breached the agreement, the court would enter a supplemental judgment incorporating additional confidential terms of the settlement. The attorney breached, and the clients moved for a supplemental judgment. After mediation, a modified settlement was reached. The new settlement included a term that the clients would not bring the matter to the attention of the Ohio Supreme Court unless he were more than 60 days in arrears on the payments. When the attorney again defaulted, the clients filed another motion for judgment. The attorney appealed, claiming that the agreement lacked consideration, because the trial court found that the provision concerning the reporting of the attorney's conduct to the Ohio Supreme Court violated public policy. The Eighth District concluded that the agreements were nevertheless supported by consideration, because the clients' "forbearance of their right to trial, which they gave in exchange for [the attorney's] promise to pay them damages, remained to enforce the contract." *Parker* at ¶ 13; *see also State ex rel. Delmonte v. Woodmere*, 8th Dist. Cuyahoga No. 86011, 2005-Ohio-6489 (in mandamus action where relator sought the inspection of public records, the parties' settlement was supported by consideration where relator agreed to dismiss the lawsuit in exchange for receipt of either certain groups of documents or respondent's payment of the statutory penalty).

{¶ 38} While *Hayes* and *Parker* support Todd's position that the right to judicial

process to adjudicate a claim has value, we find those cases are not applicable to Todd's circumstances. Unlike *Hayes*, the parties here did not mutually agree to waive their rights to the judicial process before the initiation of an action. To the contrary, the parties were actively involved in litigation and had been for more than a year. Todd, the defendant, had not brought any claims against the estate, the trust, or Sowry individually, nor had she threatened to bring any claims against them. Tr. 143-144. Todd had no claim to compromise by settling the dispute. Rather, as in *Parker*, it was Sowry, as executor of Boggs's estate, who had a claim that she was pursuing through the judicial process and who was compromising that claim through settlement.

{¶ 39} Whether Sowry continued to pursue the estate's claim against Todd was entirely within Sowry's control; Todd had no ability to force Sowry to continue to be engaged in litigation if Sowry decided to abandon her claim. While both parties desired an end to the litigation, only Sowry compromised a judicially-litigated claim in doing so. In the absence of a counterclaim or potential counterclaim, Todd had no compromisable interest in having a judicial resolution to the parties' dispute. Todd's purported relinquishment of her right to the judicial process was illusory and did not constitute consideration.

{¶ 40} As to Todd's second asserted consideration, the avoidance of future fees and litigation expenses, Todd emphasizes that there was "a **risk** of increased cost to both sides each minute litigation continued." (Emphasis sic.) She stated: "The fees paid by the Estate reduce the amount to be divided by the two ultimate beneficiaries, Ms. Sowry and Ms. Todd, and thus impact them both. One of the many benefits both parties

reasonably receive from the Settlement Agreement was reducing the **risk** that additional fees would burden the Estate, and ultimately them personally." (Emphasis sic.) In her appellate brief, Todd argues that the cases cited by Sowry are distinguishable, but she does not point to any authority to support her position.

{¶ 41} Todd's control over attorney fees and litigation expenses is functionally no different than her right to control the judicial process generally. The text messages and hearing testimony supported the conclusion that both parties were concerned about the time and expense that the litigation required. Todd testified that she was aware that she needed to pay for the attorney fees in defense of the litigation "from [her] own pockets," and she acknowledged that she did not provide a benefit to Sowry by agreeing to pay her own attorney fees. Tr. 197-198. Sowry testified that, prior to signing the alleged agreement, she did not understand how attorney fees would be paid, but she agreed to pay the estate's expenses herself, a term that benefited Todd. The parties reasonably assumed that, absent a settlement, they would accrue additional attorney fees and litigation expenses as the litigation continued and additional time would need to be devoted to the litigation process.

{¶ 42} However, the parties' desire to reduce the time and expense of litigation was a motive underlying the settlement, not consideration. *See Carlisle v. T & R Excavating, Inc.*, 123 Ohio App.3d at 284, 704 N.E.2d 39 (9th Dist.1997), citing 3 Williston, Contracts (4 Ed.1992) 336-338, Section 7:17. By agreeing to resolve the litigation, Sowry potentially reduced the estate's attorney fees and litigation expenses and provided the tangential benefit to Todd that her corresponding costs would also be limited.

Because Todd had no independent ability to prolong the litigation against Sowry's wishes, Todd's reciprocal promise to settle provided no benefit to Sowry concerning Sowry's own litigation costs above and beyond what Sowry's promise to Todd already provided. The parties' decision to settle to reduce attorney fees and litigation expenses "was more in the nature of a joint effort * * * to obtain a single benefit together, than a bargained-for exchange." *Id.* at 284.

{¶ 43} In her response to Sowry's objections to the magistrate's decision, Todd asserted that *Cincinnati Reds, L.L.C. v. Testa*, 155 Ohio St.3d 512, 2018-Ohio-4669, 122 N.E.3d 1178, was more applicable than *Carlisle*. We disagree. In *Cincinnati Reds* (an opinion in which only one other justice joined), the question before the Court was whether the sale-for-resale exemption of R.C. 5739.01(E) precluded the Reds from having to pay use tax on promotional items. The opinion noted that consideration, in the contract-law sense, was important, because there was an underlying question of whether fans furnished consideration for the Reds' promise to hand out the promotional items at the games. *Id.* at ¶ 17. The Supreme Court concluded that fans provided consideration for the promotional items, because the cost of promotional items had been incorporated into the cost of the season's ticket prices, which fans paid to attend the games. Todd argued that "*Reds* is like this case in that by agreeing to resolve this case, [Sowry] would ultimately pay less in attorneys' fees." We fail to see how *Cincinnati Reds* supports that proposition.

{¶ 44} Todd repeatedly testified at the March 1, 2022 hearing that "the end of all of this" was a large part of the consideration for the settlement. The magistrate

concluded that "ending a family struggle," along with avoiding additional attorney fees, was adequate consideration, and the trial court merely stated that the parties "desired to end a year and a half of litigation" in support of its conclusion that consideration existed. It is well established, however, that consideration requires a bargained-for exchange, and "a promise to make a gift is not made a bargain by the promise of the prospective donee to accept the gift, or by his [or her] acceptance of part of it." Restatement of the Law 2d, Contracts, Section 71 (1981). Given Todd's status as the defendant in this action, Todd's agreement to end the litigation, without her providing some additional benefit to Sowry or incurring some detriment, was akin to a donee's acceptance of a gift, rather than a bargained-for exchange.

{¶ 45} Finally, Todd states in her appellate brief that, as part of the settlement agreement, the sisters "agreed to certain accounts being Ms. Sowry's sole property, thus Ms. Todd waived any claim that those accounts were part of the Estate and subject to distribution. The parties also agreed that Ms. Sowry would be reimbursed certain funds without any claims contra." Todd did not make this argument in the trial court.

{¶ 46} Moreover, Todd acknowledged that the terms of the agreement sought a 50/50 division of the monetary assets, a resolution that placed Sowry in a worse position than without the agreement. The magistrate described the ramifications of the agreement, stating:

> So we have a fight between sisters over their mother's estate. Ms. Sowry was joint owner on accounts with her mother totaling about $100,000. Ms. Sowry thought that these accounts would come into the

estate. Ms. Todd had[,] prior to her mother's death, transferred accounts into joint accounts or into accounts into her own name. Ms. Sowry had filed suit, claiming that these funds were improperly transferred and that they all should go into the estate. These funds amount to about $100,000. Under the terms of the will, the assets will go into a trust with Ms. Sowry getting 70% and Ms. Todd getting 30%. Per the inventory, there is approximately $6,000 of assets in the estate. The Court does not know if the [trust] is funded and if so, how much is in the trust. Therefore, if Ms. Sowry is successful in her suit, she will receive $174,200 and Ms. Todd $31,800. If Ms. Sowry is unsuccessful, then Ms. Sowry will receive approximately $104,200 and Ms. Todd approximately $101,800. In either case the trust assets will be divided 70/30.

Under the terms of the purported agreement, Ms. Sowry would keep the funds she held jointly with her mother, amounting to $100,300 and Ms. Todd would keep the funds she held jointly with her mother and/or transferred to her name, amounting to $98,773 and * * * the funds in the estate would pour into the trust, which would be modified to distribute 50/50 and not 70/30.

Mag. Decision p. 3. Although paragraph 2 of the agreement provided that Sowry would retain the money that was in a joint account she had had with her mother, looking at the agreement's division of cash assets as whole, the agreement benefited Todd, not Sowry.

{¶ 47} In summary, we conclude that Todd did not provide consideration to Sowry

to support an enforceable settlement agreement. The essence of the parties' settlement agreement provided that there would be an end to the litigation and Sowry would allow Todd to keep the disputed funds plus receive additional assets (20 percent of Sowry's share of the trust assets). Todd would pay her own attorney fees, as she expected, and Sowry would pay the estate's attorney fees. While Sowry's promises provided benefits to both parties (an end to the litigation, with attendant avoidance of additional attorney fees and litigation costs), Todd did not provide any benefit to Sowry, nor did she incur a detriment in exchange for Sowry's promises. Todd's acceptance of Sowry's gratuitous promises did not convert them into an enforceable contract.

{¶ 48} In reaching our determination, we do not take lightly the fact that the purported agreement at issue is a settlement agreement. We also recognize that it is desirable for family members to resolve disputes regarding a decedent's estate. Nevertheless, we have found nothing in Ohio law that permits the enforcement of a settlement agreement, even in this context, without consideration.

{¶ 49} Sowry's second assignment of error is sustained. Given this disposition, her first, third, and fourth assignments of error are overruled as moot.

## IV. Conclusion

{¶ 50} The trial court's judgment will be reversed, and the matter will be remanded for further proceedings.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.